**CHESWOLD VOLUNTEER FIRE CO., a Delaware corporation, Plaintiff,**

v.

**LAMBERTSON CONSTRUCTION COMPANY, a Delaware corporation, C.C. Oliphant & Son, Inc., a Delaware corporation, Defendants.**

Superior Court of Delaware, Kent County.

Submitted: Nov. 30, 1982.

Decided: May 17, 1983.

Defendant Lambertson's motion to dismiss the complaint. GRANTED.

Myron T. Steele and John Williams, Prickett, Jones, Elliott, Kristol & Schnee, Dover, for plaintiff.

George F. Gardner, III and William J. DiMondi, Morris, Nichols, Arsht & Tunnell, Dover, for defendant Lambertson Const. Co.

CHRISTIE, Justice: *

Defendants have filed a motion to dismiss plaintiff's complaint pursuant to Superior Court Civil Rule 12(b)(6), asserting the bar of the limitation period found in 10 *Del.C.* § 8127.[1]   Plaintiff, Cheswold Volunteer

---

* Specially assigned to Superior Court under Del. Const. Art. IV, § 13(2), by Order of the Chief Justice dated April 5, 1983.

1.  10 *Del.C.* § 8127. *Alleged deficiencies in the construction of improvements to real property.*
    (a) [definitions]
    *   *   *   *   *   *
    (b) No action, whether in or based upon a contract (oral or written, sealed or unsealed), in tort, or otherwise, to recover damages or for indemnification or contribution for damages, resulting:
    (1) From any alleged deficiency in the construction or manner of construction of an improvement to real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction; or
    (2) From any alleged injury to property, real, personal or mixed, arising out of any such alleged deficiency; or

Fire Co., responds that that statute of limitations violates state and federal constitutional guarantees and, therefore, is void. I hold that the limitations found in 10 *Del.C.* § 8127 do not violate those constitutional provisions.

In 1971 the Fire Company contracted with Lambertson Construction Company for the construction of a new firehouse. Lambertson was the general contractor. It entered into a subcontract with its codefendant, C.C. Oliphant & Son, Inc., for the necessary roofing. The terms of the contract required a twenty-year guarantee on the roof and a bond from the roofing materials supplier, Bird & Son, Inc. The parties agree that construction was completed by 1972.

After several years, leaks developed in the roof and repairs were made by C.C. Oliphant & Son, Inc. and Bird & Son, Inc. In December, 1979, the roof developed serious defects. The roofer and the supplier were immediately notified and Lambertson was contacted the following month. Repairs did not correct the situation and in March, 1980, Lambertson notified the plaintiff that neither it nor the subcontractor would assume responsibility for the problem. Lambertson also informed the Fire Company that under the warranty bond, as it had been drafted, $910.00 would be paid toward the repair costs.

In January, 1981, the Fire Company contracted for repair and/or replacement of the roof. The final cost for a new roof under this contract was $43,150.00. In January, 1982, it filed suit for damages in this Court on a four-count complaint alleging breach of contract, breach of the roof bond and warranty contract, breach of the implied warranty of habitability, and breach of the implied warranty of fitness for a particular purpose.[2]

(3) From any alleged personal injuries arising out of any such alleged deficiency; or

(4) From any alleged wrongful death arising out of any such alleged deficiency; or

(5) From any alleged trespass arising out of any such alleged deficiency; or

(6) From any alleged injury unaccompanied with force or resulting indirectly from any such alleged deficiency;

shall be brought against any person performing or furnishing, or causing the performance or furnishing of, any such construction of such an improvement or against any person performing or furnishing, or causing the performing or furnishing of, any such designing, planning, supervision, and/or observation of any such construction or manner of construction of such an improvement, after the expiration of 6 years from whichever of the following dates shall be earliest:

a. The date of purported completion of all the work called for by the contract as provided by the contract if such date has been agreed to in the contract itself;

b. The date when the statute of limitations commences to run in relation to the particular phase or segment of work performed pursuant to the contract in which the alleged deficiency occurred, where such date for such phase or segment of work has been specifically provided for in the contract itself;

c. The date when the statute of limitations commences to run in relation to the contract itself where such date has been specifically provided for in the contract itself;

d. The date when payment in full has been received by the person against whom the action is brought for the particular phase of such construction or for the particular phase of such designing, planning, supervision, and/or observation of such construction or manner of such construction, as the case may be, in which such alleged deficiency occurred;

e. The date the person against whom the action is brought has received final payment in full, under the contract for the construction or for the designing, planning, supervision, and/or observation of construction, as the case may be, called for by contract;

f. The date when the construction of such an improvement as called for by the contract has been substantially completed;

g. The date when an improvement has been accepted, as provided in the contract, by the owner or occupant thereof following the commencement of such construction;

h. For alleged personal injuries also, the date upon which it is claimed that such alleged injuries were sustained; or after the period of limitations provided in the contract, if the contract provides such a period and if such period expires prior to the expiration of 2 years from whichever of the foregoing dates is earliest.

2. Bird & Son, Inc., the materials supplier, was voluntarily dismissed because of a defect in service. However, a separate and, as yet, unconsolidated action has been filed against that

Lambertson answered that under the provisions of 10 *Del.C.* § 8127 such a cause of action exists only during the first six years after the date of completion of the improvement, and therefore, the complaint does not state a cause of action and should be dismissed. The Fire Company responded that the statute is invalid and void because it violates the due process, equal protection and privilege and immunities clauses of the Fourteenth Amendment to the United States Constitution. The Fire Company also contends that the statute offends the due process of law clause of Article I, § 9 of the Delaware Constitution which provides, generally, that every man shall have a remedy for injury done him.[3] In this connection, the Fire Company argues that the tort date-of-discovery rule should be applied, and that it made a timely filing of its complaint. It also contends that the statute is not applicable to its bond/warranty claim.

### Background

The statute at issue here, 10 *Del.C.* § 8127, is what may be characterized as a true statute of repose in that it prevents a cause of action from arising after a specified period of time, in this case six years. It is not the traditional statute of limitations which states a time period after which an accrued cause of action is barred. *See generally Klein v. Catalano,* Mass.Sup.Jud.

Ct., 386 Mass. 701, 437 N.E.2d 514, 516 (1982); *Rosenberg v. Town of North Bergen,* N.J.Supr., 61 N.J. 190, 293 A.2d 662, 666 (1972); Annot., 93 A.L.R.3d 1242 § 2 (1979). The existence of 10 *Del.C.* § 8127 does not eliminate the need to consult other statutes of limitation which serve to modify legal remedies. 10 *Del.C.* § 8127(c).[4] *See e.g.,* 10 *Del.C.* § 8106, the three-year statute in certain tort and contract actions and 6 *Del.C.* § 2–725, the four-year statute in certain sales and warranty claims. *See also* 51 Am.Jur.2d *Limitation of Actions* § 20 (1970).

■ The limitations period provided for in 10 *Del.C.* § 8127 begins to run at the earliest of several designated dates, irrespective of the date of injury. *See* 10 *Del.C.* § 8127(b)(6). Thus, whether or not the cause of action is discoverable earlier, the passing of the six-year period deprives the injured party of a legal right to redress.[5] "The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress." *Rosenberg v. Town of North Bergen,* 293 A.2d at 667. Thus, despite the Fire Company's argument to the contrary, it is clear that if this statute is valid the discovery rule cannot be used to create a cause of action for an injury which is discovered after the six-year period.

---

party. Plaintiffs secured a default judgment against C.C. Oliphant & Son, Inc., but that judgment was set aside and the subcontractor is a party here.

3. Fourteenth Amendment of the United States Constitution [in pertinent part]:

Section 1 . . .

No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

*Article I of the Delaware Constitution (1897):*
*§ 9 Courts shall be open; remedy for injury; venue; suits against State.*

All courts shall be open; and every man for an injury done him in his reputation, person,

movable or immovable possession, shall have remedy by the due course of law, and justice administered according to the very right of the cause and the law of the land, without sale, denial, or unreasonable delay or expense. Suits may be brought against the State, according to such regulations as shall be made by law.

4. 10 *Del.C.* § 8127(c):

Nothing in this section shall extend or lengthen, nor shall anything in this section be construed or interpreted as extending or lengthening, the period otherwise prescribed by the laws of this State for the bringing of any action covered by this section.

5. 10 *Del.C.* § 8127 is, therefore, jurisdictional and, unlike the tort and warranty statutes, cannot be waived by the defendants.

This statute became part of our law in 1970. *See* 57 Del.Laws, c. 568 (1969). It protects only those "persons performing or furnishing, or causing the performance or furnishing of, any such construction of such an improvement or against any person performing or furnishing or causing the performing or furnishing of, any such designing, planning, supervision, and/or observation of . . . such an improvement . . . ." 10 *Del.C.* § 8127(b). It does not protect suppliers who do not perform or furnish construction, *Becker v. Hamada, Inc.,* Del. Supr., 455 A.2d 353 (1982), nor persons in "actual possession or actual control, as owner, tenant or otherwise . . .", 10 *Del.C.* § 8127(d).[6] As the Supreme Court found in the case of *Becker v. Hamada, Inc.,* such statutes:

[A]re prophylactic measures taken by the Legislatures to lessen the construction professionals' exposure to the almost unlimited liability which has resulted from the demise of the privity doctrine and the imposition of the discovery rule in tort cases. These statutes recognize that construction improvements have a life span of decades and that injury or damage suffered a specific time after control is relinquished to the owner may be the result of improper maintenance or other factors occurring after completion. (Citations omitted.)

*Id.* at 355. *See also* Limitation of Action Statutes for Architects and Builders—An Examination of Constitutionality, 29 Feder. Ins.Coun.Q. 41 (1978).

The federal equal protection and due process contentions regarding 10 *Del.C.* § 8127 have never been raised in the Delaware Supreme Court although those questions have been addressed by two federal courts and by high courts in at least 26 of the other 46 jurisdictions where similar statutes have been enacted. The courts in a large majority of such jurisdictions have found the statutes to be in accord with state and federal constitutional guarantees.[7]

---

6. 10 *Del.C.* § 8127(d):

The limitations prescribed by this section shall not be available by way of a defense to any person in actual possession or actual control, as owner, tenant or otherwise, of such an improvement at the time when the alleged deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

7. Similar statutes have been found to be constitutional in *Arkansas, Carter v. Hartenstein,* Ark.Supr., 248 Ark. 1172, 455 S.W.2d 918 (1970); *California, Regents of the University of California v. Hartford Accident and Indemnity Co.,* Cal.Supr., 21 Cal.3d 624, 147 Cal.Rptr. 486, 581 P.2d 197 (1978); *Louisiana, Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles,* La.Supr., 366 So.2d 1381 (1978); *Massachusetts, Klein v. Catalano,* 386 Mass. 701, Mass.Supr., Jud.Ct., 437 N.E.2d 514 (1982); *Michigan, O'Brien v. Hazelet & Erdal,* Mich.Supr., 410 Mich. 1, 299 N.W.2d 336 (1980); *Minnesota, Calder v. City of Crystal,* Minn.Supr., 318 N.W.2d 838 (1982); *Mississippi, Anderson v. Fred Wagner and Rory Anderson, Jr., Inc.,* Miss.Supr., 402 So.2d 320 (1981); *Montana, Reeves v. Ille Electric Co.,* 170 Mont. 104, Mont.Supr., 551 P.2d 647 (1976); *Nevada, Nevada Lakeshore Co., Inc. v. Diamond Electric, Inc.,* Nev.Supr., 89 Nev. 293, 511 P.2d 113 (1973); *New Jersey, Rosenberg v. Town of North Bergen,* N.J.Supr., 61 N.J. 190, 293 A.2d 662 (1972); *New Mexico, Howell v. Burk,* N.Mex.App., 90 N.M. 688, 568 P.2d 214, cert. denied 91 N.M. 3, 569 P.2d 413 (1977); *Oregon, Joseph v. Burns,* Ore.Supr., 260 Or. 493, 491 P.2d 203 (1971); *Pennsylvania, Freezer Storage, Inc. v. Armstrong Cork Co.,* Pa.Supr., 476 Pa. 270, 382 A.2d 715 (1978); *Tennessee, Harmon v. Angus R. Jessup Assoc., Inc.,* Tenn. Supr., 619 S.W.2d 522 (1981); *Texas, Hill v. Forrest & Cotton, Inc.,* Tex.Civ.App., 555 S.W.2d 145 (1977); *Utah, Good v. Christensen,* Utah Supr., 527 P.2d 223 (1974); *Washington, Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* Wash.Supr., 81 Wash.2d 528, 503 P.2d 108 (1972).

The Federal District courts in *Colorado, Cudahy Co. v. Ragnar Benson, Inc.,* D.C.Colo., 514 F.Supp. 1212 (1981) and *Virginia, Smith v. Allen-Bradley Co.,* W.D.Va., 371 F.Supp. 698 (1974) have also upheld constitutionality.

In the nine states where similar statutes have been held to be unconstitutional, four state legislatures have taken subsequent action to correct the infirmities: *Alabama* took corrective action in 1977 as a result of the decision in *Bagby Elevator and Electric Co., Inc. v. McBride,* Ala.Supr., 292 Ala. 191, 291 So.2d 306 (1974); *Hawaii* in 1976 as a result of *Fujioka v. Kam,* Haw.Supr., 55 Haw. 7, 514 P.2d 568 (1973); *Illinois* in 1978 as a result of *Skinner v. Anderson,* Ill.Supr., 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Wisconsin* in 1977 as a result of

I am of the opinion that Article I, § 9 of the Delaware Constitution and the due process and equal protection clauses of the United States Constitution are not violated by the provisions of 10 *Del.C.* § 8127. In a letter opinion, *Gant v. Whitaker,* Del.Super., C.A. No. 77C–NO–50, Christie, J. (Jan. 6, 1982), this Court held that preclusion of legal redress for an injury which arose seven years after the legislative enactment and six years after substantial completion of an improvement did not violate those constitutional provisions. The Court reasoned that the remedy for injury by the due process clause of Article I, § 9 protects only vested rights from abolition by legislative enactments. Additionally, the Court determined that the statutory classification found in 10 *Del.C.* § 8127 had a rational relationship to the economic purpose of the regulation and did not offend the equal protection clause.

Since the decision in *Gant v. Whitaker* was rendered in a format that prevented the development of full discussion and citation of authority, I will address some of the same issues at greater length here.

Under the circumstances present in this case, the question of the applicability of 10 *Del.C.* § 8127 to the Fire Company's causes of action will be approached from three perspectives:

I  Does the statute violate the Fourteenth Amendment due process clause or the Delaware Constitution Article I, § 9 due process of law clause by barring a cause of action before the injury occurs?

II  Does the statute create an arbitrary and irrational classification between similarly situated parties in violation of the Fourteenth Amendment equal protection clause?

III  Is the roof bond and warranty claim also barred by the provisions of the statute?

The merits of the privilege and immunities clause claim are subsumed within the due process examination and will not be separately addressed.[8]

■  Initially, I note that any statutory enactment enjoys a presumption of validity, and our courts do not attempt to review a valid legislative determination as to what laws are in the public interest. *Justice v. Gatchell,* Del.Supr., 325 A.2d 97, 102 (1974); *State Highway Dept. v. Delaware Power & Light Co.,* Del.Supr., 167 A.2d 27, 31 (1961); *Klein v. National Pressure Cooker Co.,* Del. Supr., 64 A.2d 529, 532 (1949); *Gallegher v. Davis,* Del.Super., 183 A. 620, 624 (1936). Thus, the burden is on the Fire Company to present clear and convincing evidence of the unconstitutionality of 10 *Del.C.* § 8127. *Justice v. Gatchell,* 325 A.2d at 102.

### I. DUE PROCESS

The Fire Company makes conclusory allegations relating to both substantive and procedural due process in its brief. It asserts that there is no significant public policy interest in cutting off a right of action before it accrues and, therefore, 10 *Del.C.* § 8127 violates the State remedy for injury

*Kallas Millwork Corp. v. Square D. Co.,* Wisc. Supr., 66 Wis.2d 382, 225 N.W.2d 454 (1974).

No action was taken after the remaining five adverse decisions: *Florida, Overland Construction Co., Inc. v. Sirmons,* Fla.Supr., 369 So.2d 572 (1979); *Kentucky, Saylor v. Hall,* Ky.App., 497 S.W.2d 218 (1973); *Oklahoma, Loyal Order of Moose, Lodge 1785 v. Cavaness,* Okla.Supr., 563 P.2d 143 (1977); *South Carolina, Broome v. Truluck,* S.C.Supr., 270 S.C. 227, 241 S.E.2d 739 (1978); *Wyoming, Phillips v. ABC Builders, Inc.,* Wyo.Supr., 611 P.2d 821 (1980).

Thus, 24 statutes have been judicially tested and 19 have been upheld and five struck down. The four subsequently enacted statutes remain presumptively valid.

8. The Fourteenth Amendment privileges and immunities clause protects rights peculiar to federal citizenship from elimination by state action. *See The Slaughter-House Cases,* 83 U.S. 36, 16 Wall. 36, 21 L.Ed. 394 (1873); *Madden v. Kentucky,* 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); *See also* J. Nowack, R. Rotunda, J. Young, Constitutional Law 376–78 (West 1978). The Article IV Privileges and Immunities Clause concerns distinctions based upon state citizenship *vis-a-vis* noncitizenship and, therefore, it not at issue here since 10 *Del.C.* § 8127 applies to citizens and noncitizens alike. *See generally* J. Nowack, R. Rotunda, J. Young, Constitutional Law 275–79 (West 1978).

clause and the due process guarantees. This Court must reject that argument. In my opinion, neither procedural nor substantive due process have been violated by the provisions of a statute which prevents a cause of action from arising six years after the date of substantial completion of an improvement.

### A. Procedural Due Process

In the case of *Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929), the United States Supreme Court upheld a Connecticut automobile guest statute after it was attacked for unlawfully abolishing a common law cause of action in negligence. The Court held that "the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Id.* at 280 U.S. 122, 50 S.Ct. 58.

Similarly, the legislative abolition of a common law right of action was held not to offend the due process guarantee contained in Article I, § 9 of the Delaware Constitution.[9] In the case of *Gallegher v. Davis,* Del.Super., 183 A. 620 (1936), Chief Justice Layton discussed a due process claim regarding the abolition of an automobile guest's right to sue the driver for negligence. He found that Article I, § 9 was meant to:

> [S]ecure the citizen against unreasonable and arbitrary deprivation of rights whether relating to life, liberty, property or fundamental rights of action relating to person or property . . . .
>
> \* \* \* \* \* \*
>
> Undoubtedly, arbitrary and unreasonable abolishment of a right of action to redress injury to the essential rights of person or property is prohibited. Certainly, the legislature may not declare to be right that which is essentially wrong, nor say that which is a definite, substantial injury to fundamental rights to be no injury, nor abolish a remedy given by the

common law to essential rights without affording another remedy substantially adequate. But no one has a vested interest in any rule of the common law. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, within constitutional limits, may be changed at the will of the legislature. The great office of statutes is to remedy defects in the common law as they develop, and to adapt it to the change of time and circumstance. (Citations omitted.) *Id.* at 624.

Thus, it is clear that the legislature may validly limit or even take away rights existing in the common law although it may not unreasonably take away fundamental rights. *Bailey v. Pennington,* Del.Supr., 406 A.2d 44, 47 (1979); *See also Dunn v. St. Francis Hosp., Inc.,* Del.Supr., 401 A.2d 77, 80–81 (1979); *Cranston v. New Process Fibre Co.,* Del.Super., 74 A.2d 818, 819 (1950).

This Court, in the case of *Gant v. Whitaker, supra,* has also addressed 10 *Del.C.* § 8127 from a procedural due process standpoint. The plaintiff in the *Gant* case was injured in July, 1977, but the defendant engineering firm had completed and been paid for its work before April, 1971, one year after this statute went into effect. The Court found that only a right of action which had accrued or vested before the effective date of the statute was eligible for constitutional protection. *See also Reeves v. Ille Electric Co.,* Mont.Supr., 170 Mont. 104, 551 P.2d 647 (1976). Thus, this Court found no due process offense since a vested right was not at issue, and the remedy for injury clause of Article I, § 9 was not violated. The facts which led to that holding are directly analogous to the facts in this litigation since the firehouse which is the subject of this litigation was completed in 1972, two years after the effective date of the statute.

---

**9.** The expression "due process of law" in the United States Constitution and the phrase "law of the land" in the Delaware Constitution, have the same meaning. *Aprile v. State,* Del.Super., 143 A.2d 739, 744, aff'd, Del.Supr., 146 A.2d 180 (1958).

The Fire Company has cited cases from several jurisdictions where statutes of repose were held to violate state constitutional provisions.[10] However, the statutes involved in those cases were overturned as a result of violation of the remedy for injury clauses in only three of the cases: [11]

(1) In the case of *Saylor v. Hall*, Ky.App., 497 S.W.2d 218 (1973), the Court held that the Kentucky constitutional provision guaranteeing access to the courts prevented the legislature from abolishing a common law right of action. That interpretation of the Kentucky constitutional provision has been examined by our courts and rejected. In *Gallegher v. Davis*, 183 A. at 624, Chief Justice Layton held that the Kentucky Court's interpretation was "too strict a view" and he adopted a more flexible approach. *Saylor v. Hall* is distinguishable on this basis.

(2) The decision in the case of *Overland Construction Co., Inc. v. Sirmons*, Fla. Supr., 369 So.2d 572 (1979) is based on reasoning similar to that found in *Saylor v. Hall*. The Florida Court also based its holding on a right of access provision of the Florida Constitution. The Florida Court discussed case law which held that the legislature could not abolish a right of action unless there was a demonstrated "overpowering" public necessity. The Court found that such a necessity could not be found in relation to the statute in question and struck the statute down without reaching the due process or equal protection arguments.

(3) In the third case, *Kallas Millwork Corp. v. Square D Co.*, Wisc.Supr., [66 Wis.2d 382], 225 N.W.2d 454, 460 (1975), the Wisconsin Court found, without elaboration, that the statute abrogated a remedy for injury in violation of Article I, § 9 of the Wisconsin Constitution. However, the Court did not rest its discussion on this aspect of the appeal but, rather, focused upon an equal protection argument. The Wisconsin legislature later reenacted the statute, specifically spelling out the reasons for its creation. *See* Wisc.Stat.Annot. § 893.89 (West Supp.1982).

Thus, the premises underlying the decisions in these three cases are distinguishable from the reasoning of Chief Justice Layton in *Gallegher v. Davis*, 183 A. at 624, and I continue to be of the opinion that procedural due process has not been violated by a statute which prevents a cause of action from arising more than six years after the substantial completion of an improvement to real property.

**B.**   *Substantive Due Process.*

■  A substantive due process examination is limited to determining whether there is any arguably rational basis for the statute. The United States Supreme Court has determined that the "States have the power to legislate against what are found to be injurious practices in their internal commercial and business affairs, so long as their

---

**10.**  *See e.g., Overland Construction Co., Inc. v. Sirmons,* Fla.Supr., 369 So.2d 572 (1979); *Skinner v. Anderson,* Ill.Supr., 38 Ill.2d 455, 231 N.E.2d 588 (1967); *Saylor v. Hall,* Ky.App., 497 S.W.2d 218 (1973); *Kallas Millwork Corp. v. Square D Co.,* Wisc.Supr., 66 Wis.2d 382, 225 N.W.2d 454 (1974); *Phillips v. ABC Builders, Inc.,* Wyo.Supr., 611 P.2d 821 (1980). *See contra: Fujioka v. Kam,* Haw.Supr., 55 Haw. 7, 514 P.2d 568 (1973); *Burmaster v. Gravity Drainage Dist. No. 2,* La.Supr., 366 So.2d 1381 (1978); *O'Brien v. Hazelet & Erdal,* Mich.Supr., 410 Mich. 1, 299 N.W.2d 336 (1980); *Howell v. Burk,* N.M.App., 90 N.M. 688, 568 P.2d 214, *cert. denied* 91 N.M. 3, 569 P.2d 413 (1977);

*Freezer Storage, Inc. v. Armstrong Cork Co.,* Pa.Supr., 476 Pa. 270, 382 A.2d 715 (1978); *Bolick v. American Barmag Corp.,* N.C.App., 54 N.C.App. 589, 284 S.E.2d 188 (1981), cited by plaintiff, was modified by the North Carolina Supreme Court which found that the plaintiff did not have standing to raise the constitutional issue. *See* 306 N.C. 364, 293 S.E.2d 415 (1982).

**11.**  A fourth case, *Phillips v. ABC Builders, Inc.,* Wyo.Supr., 611 P.2d 821 (1980), found that such a violation existed but premised its decision on the violation of other state constitutional provisions.

laws do not run afoul of some specific federal constitutional prohibition or some valid federal law." *Ferguson v. Skrupa,* 372 U.S. 726, 730–31, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93, 98 (1963). Such legislation is presumed constitutional "unless . . . it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." *United States v. Carolene Products Co.,* 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938). Judicial inquiry "must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for [the legislation]." *Id.,* 304 U.S. at 154, 58 S.Ct. at 784. *See also McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

Our statute was obviously designed to reach a permissible objective since limitation of the duration of liability is clearly a public purpose. *See* Developments in the Law: Statutes of Limitations, 63 Harv.L. Rev. 1177, 1185 (1949–1950).

> [S]tatutes of limitation are founded in wisdom and sound policy. They have been termed statutes of repose, and are regarded as highly beneficial. They proceed on the principle, that it is in the interest of the public to discourage the litigation of old or stale demands; and are designed . . . to afford a security against the prosecution of claims where, from lapse of time, the circumstances showing the true nature or state of the transaction, may have been forgotten; or may be incapable of explanation by reason of the uncertainty of human testimony, the death or removal of witnesses, or the loss of receipts, vouchers, or other papers.

*Keller v. President, Directors and Company of Farmers Bank of the State of Delaware,* Del.Super., 24 A.2d 539, 541 (1942), quoting from *Boston v. Bradley's Executor,* Del.Super., 4 Harr. 524, 526 (1847).

Our General Assembly attempted to serve the public welfare by focusing the burden of responsibility for construction defects on those potential defendants who, after the passage of time, are most likely to be responsible for the losses.[12] *See Becker v. Hamada, Inc.,* 455 A.2d at 355. I am of the opinion that the statute survives substantive due process scrutiny because facts can be and are reasonably assumed which support the legislation. *United States v. Carolene Products Co.*

## II.  EQUAL PROTECTION

■  The Fourteenth Amendment equal protection clause applies to the acts of state and local governments and deals with legislative line drawing. If economic or social legislation classifies persons for differing benefits or burdens, that law must be tested to determine whether it rationally relates to a legitimate governmental purpose. *See* J. Nowack, R. Rotunda, J. Young, *Constitutional Law* at 517–519 (West 1978). Classification is prohibited only when it arbitrarily or irrationally discriminates among similarly situated persons. *See generally Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) and *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 109–10, 69 S.Ct. 463, 465–66, 93 L.Ed. 533 (1949).

■  The Fire Company has the burden of establishing that the provisions of 10 *Del.C.* § 8127(d), which exclude owners, lessors, and tenants of an improvement from favored status, are arbitrary and therefore not rationally related to a legitimate governmental purpose. *Justice v. Gatchell,* 325 A.2d at 102. Such a claim of under inclusiveness is the gist of the Fire Company's equal protection argument.

The majority of jurisdictions which have passed on and approved the constitutionality of statutes similar to 10 *Del.C.* § 8127

---

**12.** A survey completed in 1967 indicates that 93% of all claims against architects for design defects are brought within six years of substantial completion of an improvement. *See* Limi-tation of Action Statutes for Architects and Builders—An Examination of Constitutionality, 29 Feder.Ins.Coun.Q. 41, 47, n. 29 (1978).

have done so on an equal protection rationale. I note, however, that in three of the four jurisdictions where builder's statutes were declared unconstitutional (and the situation has not been remedied by subsequent legislation), the basis for the rejection of the statute was found in equal protection principles: [13] (1) In the case of *Loyal Order of Moose v. Cavaness,* Okla.Supr., 563 P.2d 143 (1977), the Court found no rational basis for the statutory distinction between protection of contractors or architects and immunity for owners and tenants. (2) In the case of *Broome v. Truluck,* S.C.Supr., 270 S.C. 227, 241 S.E.2d 739 (1978), the Court rejected the statute as special treatment for an impermissibly narrow class. (3) And in the case of *Phillips v. ABC Builders, Inc.,* Wyo.Supr., 611 P.2d 821 (1980), the Court found no rational or reasonable justification for immunity to a narrow spectrum of defendants.

Nevertheless, I am persuaded that the better analysis is found in the majority rule, which is exemplified in the reasoning of the Courts of two neighboring jurisdictions, Massachusetts and New Jersey.

In the case of *Klein v. Catalano,* Mass. Sup.Jud.Ct., 386 Mass. 701, 437 N.E.2d 514 (1982), the improvement, a building, was completed in 1965. The six-year limitation on tort claims relating to improvements to real property was enacted in 1968, and the plaintiff was cut by a glass door in 1976. The lower court found that the statutory period had run and granted summary judgment to the defendants.

On appeal, the Supreme Judicial Court found that the statute did not affect any vested right of action, and thus, there was no due process violation nor offense to the remedy by recourse to law provision of the state constitution. The Court further found that the statute did not affect a fundamental right and that it evidenced a rational relationship to legitimate state interests.

The Massachusetts Court determined that the statutory classification recognized differences between distinct classes. It noted that after acceptance of the work by an owner, the possibility of "neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement" by the owner, tenant, or lessor existed. The Court determined that builders and suppliers work under dissimilar conditions: suppliers can develop standardized processes and maintain high quality control standards, while the inspection, supervision, and observation of construction by contractors involves individual expertise not susceptible to such quality control standards. The Court remarked that limitation of liability can also be a public policy tool to encourage experiments with new materials and designs which could result in improvements beneficial to the public. Finally, the Court reiterated the principle that legislation need not embrace every conceivable problem within a field and that the legislature may address itself to the most acute phase of the problem if it chooses. *Klein v. Catalano,* 437 N.E.2d at 524. *See also Becker v. Hamada, Inc.,* 455 A.2d at 355; *Burmaster v. Gravity Drainage Dist. No. 2,* La.Supr., 366 So.2d 1381, 1385–86 (1978); *O'Brien v. Hazelet & Erdal,* Mich.Supr., 410 Mich. 1, 299 N.W.2d 336, 342 (1980); *Cudahy Co. v. Ragnar Benson, Inc.,* D.Colo. 514 F.Supp. 1212, 1217 (1981). Our statutory classification is similar to that of Massachusetts [14] and the arguments advanced in

---

**13.** See n. 7, supra. In the fourth case, *Overland Construction Company, Inc. v. Sirmons,* Fla.Supr., 369 So.2d 572 (1979), the Court did not reach this equal protection clause argument.

**14.** Mass.Gen.L. c. 260, § 2B, as amended by St.1973, c. 777, § 2, provides that "[a]ctions in tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration." Materialmen, owners, tenants and others in control or possession are excluded. *See Klein v. Catalano,* Mass.Sup.

favor of a legitimate purpose in the case of *Klein v. Catalano* are equally applicable to 10 *Del.C.* § 8127.

The inclusiveness of a classification which excludes owners, tenants, and lessors from protection and its relationship to legitimate legislative purpose was discussed in the case of *Rosenberg v. Town of North Bergen,* N.J.Supr., 61 N.J. 190, 293 A.2d 662 (1972). There, the New Jersey Supreme Court upheld a builder's statute against due process as well as state and federal equal protection claims. The improvement, a road, was built in 1935. The statute had become effective in 1967 and the plaintiff fell and was injured in 1968. The New Jersey statute provided a ten-year period after which actions in tort, contract, or "otherwise" cannot arise. The Court held:

> For convenience we have referred to the beneficiaries of this legislation as architects and building contractors. But the favored class is much larger. It includes "any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property." We do not attempt at this time to enumerate all of the classes of persons coming within this statutory group. These might include, as examples only, the designer of a sewage plant for a development complex, a landscape gardener or a well driller.
> 293 A.2d at 668.

*See also Freezer Storage, Inc. v. Armstrong Cork Co.,* Pa.Supr., 476 Pa. 270, 382 A.2d 715 (1978).[15]

The Delaware statute contains language very similar to that found in the New Jer-

sey statute. *Compare* 10 *Del.C.* § 8127(b) *with* 2A N.J.S.A. 14–1.1. (West Supp.1982–83). I am of the opinion that the favored statutory class is reasonably broad and encompasses persons similarly situated whose inclusion advances a legitimate legislative goal. Therefore, I adopt the reasoning of the Massachusetts and New Jersey Courts and find a rational relationship between the provisions of 10 *Del.C.* § 8127 and legitimate legislative objectives.[16]

### III.

Finally, the Fire Company's contention regarding the inapplicability of the provisions of 10 *Del.C.* § 8127 to the breach of the contract to secure a suitable bond for the twenty-year express roof warranty must be briefly addressed. There is no dispute that a limited twenty-year warranty and warranty bond were furnished to the Fire Company in 1972. A claim of breach of that warranty is not pressed against these defendants. Rather, the Fire Company's contentions focus on Lambertson's alleged failure to furnish a specific type of twenty-year bond in conjunction with the roof guarantee, one which would pay the entire cost of repair or replacement.

The fact that the bond secures an express warranty which extends over a twenty-year period does not remove the underlying contract from the statutory time limitation. The type of injury described by the Fire Company relates to an alleged breach of the underlying 1971 or 1972 contract, which required Lambertson to secure an appropriate

Jud.Ct., 386 Mass. 701, 437 N.E.2d 514, 523 (1982).

**15.** In *Freezer Storage, Inc. v. Armstrong Cork Co.,* an action brought on state constitutional grounds, the Court affirmed the viability of its builder's statute. It found the class distinction rational for several reasons: the architect or builder is liable to a larger class of persons than an owner; owners are liable only in tort while builders and other professionals may be liable in tort, contract, or warranty; the common law limits the class to whom an owner is liable, for example trespassers or mere licen-

sees; there are sufficiently distinct insurance coverage problems between the statutory classes. Id. 382 A.2d at 718–20.

**16.** At oral argument, the Fire Company alleged that 10 *Del.C.* § 8127 was special legislation and therefore violated the Delaware Constitution. That argument was not made in the briefs nor addressed at any length at oral argument. I assume that the merits of that argument would be analogous to the Fire Company's equal protection contentions and therefore find that it is resolved in the manner indicated in this section.

bond.[17] Since the Fire Company's complaint sounds in contract, it is subject to the same limitations as its other claims, and, under the clear provisions of 10 *Del.C.* § 8127(b), it is barred.[18]

I find that all of the Fire Company's complaints are barred by the provisions of 10 *Del.C.* § 8127. Defendant Lambertson's

motion to dismiss the complaint is granted. IT IS SO ORDERED.

17. This breach occurred, if at all, when the bond was tendered to the Fire Company. *See Mastellone v. Argo Oil Corp.,* Del.Supr., 82 A.2d 379 (1951); 6 Del.C. § 2–725(2).

18. As noted earlier, 10 Del.C. § 8127 provides [in pertinent part]:

"No action whether in or based upon a contract . . . ."