**CHRYSLER CORPORATION, a corporation of the State of Delaware, Plaintiff,**

v.

**STATE of Delaware and Glenn C. Kenton, in his capacity as the Secretary of State of the State of Delaware, Defendants.**

Supreme Court of Delaware.

Submitted: Sept. 10, 1982.

Decided: Feb. 4, 1983.

Charles S. Crompton, Jr. (argued) and James F. Burnett (argued), of Potter Anderson & Corroon, Wilmington, for plaintiff.

W. Harding Drane, Jr. (argued) and Roger A. Brown (argued), Deputy Attys. Gen., Wilmington, for defendants.

Before HERRMANN, C.J., McNEILLY and QUILLEN, JJ.

HERRMANN, Chief Justice:

This case requires inquiry into the application of Section 391 of the General Corporation Law, both prior and subsequent to its amendment of July 9, 1982.[1]

1. 8 *Del.C.* § 391 (prior to amendment of July 9, 1982 and for first consideration) provided in pertinent part:

"§ 391. Taxes and fees payable to Secretary of State upon filing certificate or other paper

"(a) The following taxes and fees shall be collected by and paid to the Secretary of State, for the use of the State—

"(1) Upon the receipt for filing of an original certificate of incorporation, the tax shall be computed on the basis of one cent for each share of authorized capital stock having par value up to and including 20,000 shares, one-half of a cent for each share in excess of 20,000 shares up to and including 200,000 shares, and one-fifth of a cent for each share in excess of 200,000 shares; one-half of a cent for each share of authorized capital stock without par value up to and including 20,000 shares, one-fourth of a cent for each share in excess of 20,000 shares up to and including 2,000,000 shares, and one-fifth of a cent for each share in excess of 2,000,000 shares. In no case shall the amount paid be less than $10. For the purpose of computing the tax on par value stock each $100 unit of the authorized capital stock shall be counted as one taxable share.

"(2) Upon the receipt for filing of a certificate of amendment of certificate of incorporation, or *an amended certificate of incorporation* before payment of capital, or a restated certificate of incorporation, *increasing the authorized capital stock of a corporation,* the tax shall be an amount equal to the difference between the tax computed at the foregoing rates upon the total authorized capital stock of the corporation including the proposed increase, and the tax computed at the foregoing rates upon the total authorized capital stock excluding the proposed increase. In no case shall the amount paid be less than $10.

"(3) Upon the receipt for filing of an amended certificate of incorporation before payment of capital and not involving an increase of authorized capital stock, or *an amendment to the certificate of incorporation not involving an increase of authorized capital stock,* or a restated certificate of incorporation not involving an increase of authorized capital stock, or a composite certificate of incorporation, or a certificate of reduction of capital, or a certificate of retirement of stock, the tax to be paid shall be $10. For all other certificates relating to corporations, not otherwise provided for, the tax to be paid shall be $5. In case of corporations created solely for religious or charitable purposes no tax shall be paid. * * *

The Chrysler Corporation, a Delaware corporation, instituted this action in the Court of Chancery for a declaratory judgment and injunctive relief preventing the Secretary of State from collecting taxes and fees assessed under § 391. The case was certified to this Court for decision of the following question:

"Where a Delaware corporation, by means of adoption of a single resolution, amends its certificate of incorporation so as to change its authorized common stock from a certain number of par value shares to a greater number of shares without par value; and the corporation initially files a certificate of amendment changing only the number of shares which it is authorized to issue and pays a tax for such change computed under 8 *Del.C.* § 391(a)(2); and the corporation thereafter files a second certificate of amendment changing the shares of common stock which it is authorized to issue from shares having a par value to shares without par value; is the tax payable to the Secretary of State upon the filing of the second certificate of amendment assessed pursuant to subsection (2) or subsection (3) of 8 *Del.C.* § 391(a)?"

This Court accepted certification, having determined that the question was "of first instance in this State," and that it demonstrated "important and urgent reasons for an immediate determination by this Court." *Del. Const.* Art. IV, § 11(9); Rule 41(b).[2]

I.

The following facts are undisputed:

At Chrysler's 1981 annual stockholders meeting, pursuant to the unanimous recommendation of its Board of Directors, the stockholders voted to amend Chrysler's certificate of incorporation in two respects: (1) to increase the authorized number of shares of common stock that the Corporation may issue from 120 million to 170 million; and (2) to redesignate the stock from shares having a par value of $6.25 to shares without par value.[3]

Thereafter, on July 17, 1981, Chrysler filed with the Secretary of State ("Secretary") a certificate of amendment of its corporate charter increasing the authorized number of shares of common stock from 120 million to 170 million. Concurrently, Chrysler paid taxes thereon in the amount of $6,250, as assessed by the Secretary under § 391(a)(2).

"(b) For the purpose of computing the taxes prescribed in subsection (a), (1, 2 and 4) of this section the authorized capital stock of a corporation shall be considered to be the total number of shares which the corporation is authorized to issue, whether or not the total number of shares that may be outstanding at any one time be limited to a less number." (Emphasis supplied)

**2.** Supreme Court Rule 41 provides in pertinent part:

"RULE 41.
"CERTIFICATION OF QUESTIONS OF LAW
"*(a) Who May Certify.* Any court from which a direct appeal of a final or interlocutory order may be taken to this Court may, on motion or *sua sponte,* certify to this Court for decision a question of law arising in any case before it prior to the entry of final judgment if there is an important and urgent reason for an immediate determination of such question by this Court.
"*(b) Requirements for Accepting a Certification.* Certification will be accepted in the exercise of the discretion of the Court only where there exist important and urgent reasons for an immediate determination by this Court of the

questions certified. A certification will not be accepted if facts material to the issue certified are in dispute. A certificate shall state with particularity the important and urgent reasons for an immediate determination by this Court of the question certified. Without limiting the Court's discretion to hear proceedings on certification, the following illustrate reasons for accepting certification:
"(i) The question of law is of first instance in this State;
"(ii) The reported opinions of the trial courts are conflicting upon the question of law;
"(iii) The question of law relates to the constitutionality, construction or application of a statute of this State which has not been, but should be, settled by the Court. * * *."

**3.** This restructure was required by the Federal Government for compliance by Chrysler with the terms and conditions for financial assistance to Chrysler under the governing Act of Congress. *See* Chrysler Corporation Loan Guarantee Act of 1979, 15 U.S.C. § 1868 (Supp. V 1981).

A second certificate of amendment was filed by Chrysler later the same day redesignating the common stock from shares having a par value of $6.25 to shares without par value. The Secretary determined that, based on a longstanding interpretation of § 391 by his Department and an administrative determination that Chrysler was required to file a single certificate of amendment under the circumstances, a tax of $318,050. was due and payable by Chrysler upon the second certificate of amendment under § 391(a)(2). Chrysler promptly and timely protested on the ground that the assessment on the second certificate should have been made under § 391(a)(3) in the amount of $10, and not under § 391(a)(2).[4]

## II.

Chrysler contends basically that the provisions of the Statute are clear and unambiguous and that the second certificate was assessable under § 391(a)(3) because it did not involve "an increase of authorized capital stock."

The State contends that § 391(a)(2) is not limited in application to increases in the number of shares that a corporation is authorized to issue, but applies to all changes in the corporation's authorized capital stock which increase the tax computed thereon under § 391(a)(1); that § 391(a)(2) and § 391(a)(3) are ambiguous and therefore statutory construction is required; that "analysis of the statutory scheme as a whole demonstrates that the Secretary's interpretation is correct and in accordance with the statutory scheme, while [Chrysler's] construction leads to an unreasonable and absurd result that cannot have been intended by the General Assembly."

The State has summarized its position on this facet of the case as follows: "To adopt the interpretation urged by Chrysler, that section 391(a)(2) applies exclusively to increases in the *number* of authorized shares, would altogether defeat the statutory

scheme distinguishing par *from no par* shares, exalt form over substance, and substantially lower the tax collectable under section 391(a)."

## III.

We find untenable the State's position that the phrase "increasing the authorized capital stock" in § 391(a)(2), and the phrase "not involving an increase of authorized capital stock" in § 391(a)(3), are ambiguous and do not mean an increase (or lack thereof) in the *number* of authorized shares.

The language in issue is defined in the Statute in clear and unambiguous terms.

For §§ 391(a)(2) and (a)(3) purposes, a charter amendment changing stock from shares with par value to shares without par value does not "increase the authorized capital stock" of a corporation. For the purpose of computing the taxes prescribed by § 391(a)(1) and (2), the definition of "authorized capital stock" was expressly set forth in § 391(b) as follows:

"* * * the authorized capital stock of a corporation shall be considered to be the *total number of shares* which the corporation is authorized to issue." (Emphasis supplied)

■ Sections 391(a)(2) and 391(b) must be read together. The second certificate of amendment did not increase the "total number of shares" which Chrysler was authorized to issue. It follows that the certificate did not increase "the authorized capital stock" of Chrysler and that, therefore, § 391(a)(3), and not § 391(a)(2), controlled the assessment of tax on the second certificate.

This conclusion is mandated by the clear and unambiguous language of § 391(b). There is no room for statutory construction or interpretation here. Obviously, if a word or phrase "is neither defined in the Act nor is there an accepted definition in common usage . . . the word and the phrase is am-

---

4. During the course of this proceeding, by agreement of the parties, Chrysler made payment of the assessed amount with the reserva-tion of the right to contest the payment and to have a refund if it prevails in this action.

biguous and judicial construction is required to ascertain the legislative intent." *Mosley v. Bank of Delaware,* Del.Supr., 372 A.2d 178, 179 (1977). However, if the General Assembly sees fit to provide a definition for a word or a phrase in a statute, "a court will be bound by that definition." *Stiftel v. Malarkey,* Del.Supr., 384 A.2d 9, 21 (1977); *accord, C & T Associates, Inc. v. Government of New Castle County,* Del.Ch., 408 A.2d 27, 30 (1979). "Absent an ambiguity in language, there is no room for construction, and an ambiguity may not be created in language otherwise clear by an underlying general statutory purpose." *Beck v. Lund's Fisheries, Inc.,* Del.Supr., 164 A.2d 583, 586 (1960). "The general rule of statutory construction repeatedly affirmed by the courts of this state generally, and, in particular, by this court, is that where the language of a statute is plain and conveys a clear and definite meaning, the courts will give to the statute the exact meaning conveyed by the language, adding nothing thereto, and taking nothing therefrom." *Federal United Corp. v. Havender,* Del. Supr., 11 A.2d 331, 337 (1940).

The State contends that substantial weight should be given to the Secretary's application of the Statute because it is consistent with a longstanding administrative practice of his Department. This argument is of little help to the State for two reasons: First, because the practice has not been documented; and second, weight is given to an administrative interpretation only when a statute is ambiguous and construction is required. *Kelly v. Bell,* Del.Ch., 254 A.2d 62, 68 (1969). If a statute is plain and explicit, "usage or custom, no matter how long continued or how generally acquiesced in, cannot be seized upon to override the plain meaning conveyed by it." *Delaware Steeplechase & Race Ass'n. v. Wise,* Del. Supr., 27 A.2d 357, 361 (1942).

To sustain the State's position would be to disregard the clear language of the Statute, to speculate, and to engage in imper-missible judicial legislation. It is neither for the Secretary nor for this Court to adjudge the wisdom or practicality of a clear and plain statutory provision, or to restructure the Statute by interpretation. Compare *State v. Bethlehem Steel Corp.,* Del.Super., 184 A. 873 (1936).

The State seeks to find ambiguity, permitting invocation of rules of construction, upon the ground that the literal terms of the Statute lead to "unjust and absurd" results and would "exalt form over substance." In the present context, it is not within our province thus to classify the letter of § 391. The State argues that "anyone who examines the statute in more than a cursory fashion will be struck by the fact that there is little which is equitable or rational in the scheme it establishes." Whether this is so, we are not required to decide here. Suffice it to say that if tax "loopholes" result from the literal application of the language of the Statute, it is generally a matter for the General Assembly to address. For present purposes, we adopt the position taken by this Court in *Highfield v. Delaware Trust Co.,* Del.Supr., 152 A. 124, 129 (1930):

> "We recognize that our conclusion will deny to the State a substantial tax in the instant case and as time goes on may result in the loss of considerable revenue. If the result be an objectionable one, the remedy lies with the Legislature."[5]

## IV.

Alternatively, the State contends that § 391(a)(2) should apply to the stock reclassification because it was accomplished as part of "one integrated transaction" which included an increase in the number of authorized shares. To view the transaction otherwise, the State again contends, would "place form over substance."

Again, we find the State's position untenable. The undisputed facts show that Chrysler made two substantive changes in

**5.** As discussed *infra*, the Legislature did move to "plug" the "loophole" promptly upon its challenge in this case, raising an issue as to the retroactive effect of such legislation.

its certificate of incorporation for two separate reasons.

The basic authority to amend a certificate of incorporation appears in 8 *Del.C.* § 242.[6] That Statute lists as separate allowable changes (1) increases in authorized capital stock, and (2) reclassifications of stock from par to no par. The consolidation of the two changes into one resolution before the shareholders did not render them substantively one transaction.

Chrysler was not required by the law to file a single amendment. Section 242(a) provides: "Any or all such changes or alterations *may* be effected by one certificate of amendment." (Emphasis supplied). As there used, the word "may" is permissive, not mandatory. The filing of the two amendments was thus within the Statute and did not operate to increase Chrysler's tax assessment.

## V.

This case was first argued and submitted for decision by this Court on April 16, 1982. While the case was still under advisement on June 21, 1982, the General Assembly enacted S.B. 635,[7] and the Governor ap-

---

**6.** 8 *Del.C.* § 242 provides in relevant part:

"§ 242. *Amendment of certificate of incorporation after receipt of payment for stock; non-stock corporation*

"(a) After a corporation has received payment for any of its capital stock, it may amend its certificate of incorporation, from time to time, in any and as many respects as may be desired, so long as its certificate of incorporation as amended would contain only such provisions as it would be lawful and proper to insert in an original certificate of incorporation filed at the time of the filing of the amendment; and, if a change in stock or the rights of stockholders, or an exchange, reclassification or cancellation of stock or rights of stockholders is to be made, such provisions as may be necessary to effect such change, exchange, reclassification or cancellation. In particular, and without limitation upon such general power of amendment, a *corporation may amend its certificate of incorporation, from time to time, so as:* * * *

"(3) *To increase or decrease its authorized capital stock or to reclassify the same, by changing the number, par value, designations,* preferences, or relative, participating, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights, or by *changing shares with par value into shares without par value,* or shares without par value into shares with par value *either with or without increasing or decreasing the number of shares;* * * *

*Any or all such changes or alterations may be effected by 1 certificate of amendment. * * ***"
(Emphasis supplied)

**7.** S.B. No. 635 provides:

"Section 1. Amend subsection (b) of § 391, Title 8, Delaware Code, by redesignating existing subsection (b) as subsection (b)(1) of said section.

"Section 2. Amend subsection (b) of § 391, Title 8, Delaware Code, by adding a paragraph (2) to said subsection to read as follows:

"(2) For the purpose of computing the taxes prescribed in subsection (a)(2) and (3) of this section, a certificate of amendment of certificate of incorporation, or an amended certificate of incorporation before payment of capital, or a restated certificate of incorporation, shall be considered as increasing the authorized capital stock of a corporation provided it involves an increase in the number of shares, or an increase in the par value of shares, or a change of shares with par value into shares without par value, or a change of shares without par value into shares with par value, or any combination of two or more of the above changes, and provided further that the tax computed at the rates set forth in subsection (a)(1) of this section upon the total authorized capital stock of the corporation including the proposed change or changes exceeds the tax so computed upon the total authorized stock of the corporation excluding such change or changes."

"SYNOPSIS

"This bill is intended to ratify the longstanding interpretation by the Secretary of State and the Division of Corporations with respect to the proper method of calculating the amount of tax due under 8 *Del.C.* § 391(a)(2)–(3) upon receipt for filing of documents amending a corporation's capital structure. That interpretation has been challenged in litigation now pending before the Delaware Supreme Court. Under 8 *Del.C.* § 391(a)(2)–(3), a greater tax is ordinarily due upon receipt of amendments increasing the authorized capital stock. Correspondingly, a lesser tax of ten dollars is ordinarily due with respect to amendments not involving such an increase. The bill is intended to emphasize and make clear that the phrases "increasing the authorized capital stock of a corporation" and "increase of authorized capital stock" are not restricted in meaning merely to increases in the number of authorized shares, but include certain other specified corporate changes as well. Author: Senator Cordrey"

proved the Bill on July 9, 1982. On that date, this Court, *sua sponte,* requested supplemental briefing and argument upon the following questions:

"(1) Will Senate Bill No. 635 (approved by the Governor July 9, 1982) apply retroactively to the situation before this Court on certification?

"(2) Does the doctrine of contemporary legislative construction, rejected in *Opinion of the Justices,* Del.Supr., 385 A.2d 695 (1978), apply here?"

Since our foregoing holding is contrary to the Secretary's interpretation of § 391, we must now decide whether S.B. No. 635 has retrospective application to the July 17, 1981 assessments here involved.

■ We hold that S.B. No. 635 does not have retrospective application in this case. It is a time-honored principle that this Court "will not infer an intention to make an act retrospective," and that "to give an act a retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the statute." *Keller v. Wilson & Co.,* Del.Supr., 190 A. 115, 125 (1936). *See also Monacelli v. Grimes,* Del.Supr., 99 A.2d 255, 267 (1953). This rule is especially applicable to a taxation statute. *See Brown v. Pennsylvania Co. for Insurances,* Del.Super., 126 A. 715, 718 (1924).

The State concedes that "there is no express provision in S.B. 635 that the language added to § 391 is to apply retroactively." It is contended by the State, nevertheless, that the legislative intent of a retrospective application may be implied from the Synopsis to the Statute.

It is correct that such Synopsis may be used, on occasion, as a source from which legislative intent as to retroactivity may be gleaned. But this source is available only if the Court determines that the language of the Statute is ambiguous and requires interpretation. *Carper v. New Castle County Bd. of Educ.,* Del.Supr., 432 A.2d 1202, 1205 (1981). A statutory synopsis cannot change the meaning of an unambiguous statute.

*Bank of America v. GAC Properties Credit, Inc.,* Del.Ch., 389 A.2d 1304, 1309 (1978). In light of our conclusion that the pertinent provisions of § 391 are unambiguous, the State's reliance upon the Synopsis is, therefore, misplaced.

Finally, and for the same reason, the State may not prevail upon the basis of the "surrounding circumstances," i.e., the timing, of the enactment of S.B. No. 635. Only ambiguity in the Statute, which is lacking here, would permit the implications relied upon by the State.

\* \* \* \* \* \*

We find the doctrine of contemporary legislative construction inapposite in this case. Both parties agree.

## VI.

Accordingly, we answer the Certified Question as follows: The tax payable to the Secretary of State upon the filing of the second certificate of amendment must be assessed pursuant to the provisions of 8 *Del.C.* § 391(a)(3).

\* \* \* \* \* \*

This decision shall have no precedential effect retrospectively, except (1) in this case; (2) in any other case in which an assessment under § 391 was under protest on the date of the commencement of this action, July 31, 1981; and (3) as may have been otherwise agreed upon by the Secretary of State. This decision shall have no precedential effect prospectively by reason of S.B. No. 635.