498 A.2d 1095 (1984)
In the Matter of CAROLYN S. S. and Michael J. S., Minor Children.
Supreme Court of Delaware.
Submitted: April 16, 1984.
Decided: September 21, 1984.
Michael M. Bell, Woloshin & Tenenbaum, P.A., Wilmington, for appellant.
L. Susan Faw, Richards, Layton & Finger, Wilmington, for appellee.
Before HERRMANN, C.J., HORSEY and CHRISTIE, JJ.
HERRMANN, Chief Justice:
This appeal raises the issue of whether due process of law requires the appointment of counsel for an indigent parent in a parental rights termination proceeding.

I.
During June, 1983, the appellee, Children's Bureau of Delaware, Inc., (hereinafter "Children's Bureau"), filed in Family Court a petition under 13 Del.C. § 1103[1] to *1096 terminate the parental rights of the appellant, Carolyn S. S., and those of her husband, Michael J. S.,[2] as to their two minor children. A hearing on the petition was scheduled for July 28, 1983.
In early May, the Children's Bureau had informed the appellant of its intention to file the petition to terminate parental rights. It also advised the appellant to obtain counsel. In an effort to retain counsel, the appellant visited a private attorney two weeks prior to the hearing and subsequently sought the assistance of the Delaware State Bar Association. Finally, one week prior to the hearing, the appellant visited the Community Legal Aid Society, Inc. (hereinafter "Community Legal Aid").
Unable to retain counsel, the appellant appeared at the hearing unrepresented. When the Trial Judge asked her if she was ready to proceed, she replied, "Not really but, I mean, I don't have a lawyer for legal representation." She then explained to the Trial Judge that she had tried to obtain counsel and that Community Legal Aid might be able to investigate if she were able to obtain a continuance.
The Trial Judge refused to grant a continuance. He believed that the appellant had "had plenty of opportunity to seek legal counseling" and had "let it go to the last minute." He then told the appellant, "I'm not going to continue the case on a `maybe we're going to represent her.'" In a final effort to obtain the continuance, the appellant said that if Community Legal Aid could not represent her, then she would find funds for private representation. The Trial Judge proceeded with the hearing nonetheless.
At the close of the hearing, the Trial Judge told the appellant that he would entertain a motion for rehearing made within ten days. However, Community Legal Aid declined to represent the appellant in connection with the motion for rehearing, and no such motion was made. Thereupon, the Trial Court ordered that the parental rights of the appellant and her husband be terminated. The Trial Court made no inquiry into the appellant's ability to pay for an attorney and made no findings as to her indigency. This appeal followed.

II.
The appellant contends that the State's failure to appoint counsel for her in the parental rights termination proceeding violated her due process rights. The issue is governed by Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). In Lassiter, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not require that counsel be appointed for indigent parents in every parental rights termination proceeding. Rather, the Court held the decision of whether due process requires the appointment of counsel in such case lies within the discretion of the Trial Judge in the first instance, subject to appellate review.
A summary of the rationale of Lassiter is noteworthy in view of the result we reach in this case:
The Court noted that, under the "preeminent generalization", 452 U.S. at 25, 101 S.Ct. at 2158, of the Court's precedents, the Constitution mandates the appointment of counsel for an indigent defendant only in a criminal prosecution in which the defendant faces the possibility of losing his physical liberty. It is the defendant's interest in personal freedom that "triggers the right to appointed counsel." 452 U.S. at 25, 101 *1097 S.Ct. at 2158. "Significantly, as a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." 452 U.S. at 26, 101 S.Ct. at 2159. The Court said that its precedents
"* * * speak with one voice about what `fundamental fairness' has meant when the Court has considered the right to appointed counsel, and we thus draw from them the presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured." 452 U.S. at 26-27, 101 S.Ct. at 2159.
The Court then stated that the due process factors to be weighed against that presumption derive from the case of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which sets forth three elements to be evaluated in deciding what due process requires in a case in which physical liberty is not endangered: "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." 452 U.S. at 27, 101 S.Ct. at 2159. The Court said: "We must balance these elements against each other, and then set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom." 452 U.S. at 27, 101 S.Ct. at 2159.
In examining the private interests at stake, the Lassiter Court underscored the fundamental nature of a parent's rights to nurture and rear her child:
This Court's decisions have by now made plain beyond the need for multiple citation that a parent's desire for and right to "the companionship, care, custody and management of ... her children" is an important interest that "undeniably warrants deference and, absent a powerful countervailing interest, protection." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed. 551.
452 U.S. at 27, 101 S.Ct. at 2159.
Despite such importance of parental rights, the Court found that the weight of these factors would not always overcome the presumption that the Constitution mandates court-appointed counsel only for indigents who face a jail sentence. In that connection, the Court stated:
If, in a given case, the parent's interests were at their strongest, the State's interests at their weakest, and the risks of error were at their peak, it could not be said that the Eldridge factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel. But since the Eldridge factors will not always be so distributed... neither can we say that the Constitution requires the appointment of counsel in every parental [rights] termination proceeding.
452 U.S. at 31-32, 101 S.Ct. at 2162.
Thus, Lassiter, stands for the rule that the Trial Judge, in the exercise of sound judicial discretion, is obliged to decide in the first instance whether due process requires the appointment of counsel for an indigent parent in a given case, subject to review on appeal.

III.
The appellant contends, however, that Lassiter is not controlling because a state may afford its citizens more protection than is mandated by the Federal Constitution; and, under that principle, this Court should declare, as a matter of due process, that the Delaware Constitution affords an indigent parent an absolute right to appointed counsel in this type of case.[3]
*1098 The phrase "due process of law" in the Federal Constitution and the phrase "law of the land" in the Delaware Constitution have substantially the same meaning. See Opinion of the Justices, Del.Supr., 246 A.2d 90 (1968). We find no sound reason for interpreting the due process language of the Delaware Constitution differently than the Due Process Clause of the Federal Constitution has been interpreted by the U.S. Supreme Court in Lassiter. We conclude that the enlargement of the rule of Lassiter urged by the appellant is not a matter of constitutional right; it is a matter for the consideration of the General Assembly.
In announcing its rule of a limited right to appointed counsel in a case of this kind under the Due Process Clause, the Supreme Court stated in Lassiter:
In its Fourteenth Amendment, our Constitution imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair. A wise public policy, however, may require that higher standards by adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental [rights] termination proceedings, but also in dependency and neglect proceedings as well. [Citations omitted.] Most significantly, 33 States and the District of Columbia provide statutorily for the appointment of counsel in termination cases. The Court's opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise.
As above indicated, when Lassiter was decided, in 1981, thirty-three states and the District of Columbia had adopted a "wiser" policy by adopting statutes requiring that counsel be appointed for indigents as a matter of right in termination cases. 452 U.S. at 34. A number of state courts had held that the Federal Constitution required the assistance of counsel for indigents in all termination proceedings.[4] However, since those cases were decided before Lassiter, they are no longer persuasive. Compare Nordgren v. Mitchell, 10th Cir., 716 F.2d 1335 (1983). It is noteworthy that the right to counsel required by those cases has generally been re-established by statute in the states involved.
Thus, it is clear that, by statute, a large majority of the states now require court-appointed counsel, as a matter of right, for indigents facing parental termination proceedings. Since we find Delaware among the minority of the states which have not progressed in this developing area of the *1099 law, we take the occasion to call the situation to the attention of the General Assembly.

* * *
The judgment below is reversed and the case remanded for rehearing before another Judge, with instructions that the Trial Judge (1) make a finding as to the indigency of the appellant; and (2) if indigency is found, decide whether due process requires the appointment of counsel for the appellant, under the guidelines set forth in Lassiter, before proceeding further in accordance herewith.
NOTES
[1] 13 Del.C. § 1103, entitled, "Grounds for termination of parental rights," provides in pertinent part:

The procedure for termination of parental rights for the purpose of adoption or, if a suitable adoption plan cannot be effected, for the purpose of providing for the care of the child by some other plan which may or may not contemplate the continued possibility of eventual adoption, may be initiated whenever it appears that:
* * * * * *
(5) The parent or parents of any child, or any person holding parental rights over such child, are not able, or have failed, to plan adequately for the child's physical needs or his mental and emotional health and development and:
a. In the case of a child in the care of an authorized agency:
1. The child has been in the care of an authorized agency for 1 year, or there is a history of previous placement or placements of this child, or a history of neglect, abuse or lack of care of other children by this parent; and
2. The conditions which led to the child's placement still persist, and there appears to be little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future.
[2] The father did not appear in the Family Court proceeding and is not a party to this appeal.
[3] A comparison of the due process language of the Federal and Delaware Constitutions is enlightening:

The Due Process Clause of the Fourteenth Amendment provides:
"* * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *"
Del.Const., Art. I, § 9 provides:
"* * * every man for an injury done him in his reputation, person, moveable or immoveable possessions, shall have remedy by the due course of law, and justice administered according to the very right of the cause, and the law of the land * * *" (emphasis supplied)
Del.Const., Art. I, § 7 provides:
"In all criminal prosecutions, the accused * * * shall not be compelled to give evidence against himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land." (emphasis supplied)
[4] Department of Public Welfare v. J.K.B., Mass. Supr., 379 Mass. 1, 393 N.E.2d 406 (1979); In re Myricks, Wash.Supr., 85 Wash.2d 252, 533 P.2d 841 (1975) (statute now adopted, Wash.Rev.C. Ann. § 26.32.054 (West Supp.1984-1985)); Crist v. Division of Youth and Family Services, N.J.Super., 128 N.J.Super. 402, 320 A.2d 203 (1974); State ex rel. LeMaster v. Oakley, W.V.Supr., 157 W.Va. 590, 203 S.E.2d 140 (1974); (statute now adopted, W.Va.C. § 49-6-2(2) (Michie Supp. 1984)); In re Luscier, Wash.Supr., 84 Wash.2d 135, 524 P.2d 906 (1974) (statute now adopted); In re Chad S., Okl.Supr., 580 P.2d 983 (1978); Danforth v. State Department of Health and Welfare, Me.Supr., 303 A.2d 794 (1973) (statute now adopted, Me.Rev.Stat.Ann. tit. 22, § 4052(3)(H) (West Supp.1983-1984)); In re Friesz, Neb.Supr., 190 Neb. 347, 208 N.W.2d 259 (1973); In re R.I., Pa.Supr., 455 Pa. 29, 312 A.2d 601 (1973); In re B., N.Y.Ct.App., 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (1972) (statute now adopted, N.Y.Soc.Serv.Law § 384-b(3)(e) (McKinney 1983); State v. Jamison, Or.Supr., 251 Or. 114, 444 P.2d 15 (1968).