David R. DiSTEFANO and James
Stewart, Plaintiffs Below,
Appellants,

v.

Robert J. WATSON, Commissioner of the
Delaware Department of Correction,
Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: May 16, 1989.
Decided: Oct. 11, 1989.
On Motion for Rehearing En Banc
Nov. 16, 1989.

The defendant-appellee, Robert J. Watson, Comn.

Nancy Jane Perillo, Cooperating Atty., American Civil Liberties Union of Delaware, Wilmington, on behalf of appellants.

John J. Polk, Deputy Atty. Gen., Dept. of Justice, Wilmington, on behalf of appellee.

Before CHRISTIE, C.J., HORSEY, and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from the entry of a final order by the Superior Court, in and for New Castle County. The plaintiffs-appellants, David R. DiStefano ("DiStefano") and James Stewart ("Stewart"), both of whom are prisoners at the Delaware Correctional Center, filed a civil petition for a writ of mandamus and declaratory relief. Their complaint challenged the validity, scope, and application to them of the February 21, 1986 amendment to 11 *Del.C.* § 6537, codified as a new subsection (b) of that statute. That amendment limited the authority of the Department of Correction to permit certain prisoners, including DiStefano and Stewart, to participate in any program or to engage in any visitation beyond the confines of a secured penal institution. The defendant-appellee, Robert J. Watson, Commissioner of the Delaware Department of Correction ("Watson"), filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The Superior Court granted Watson's motion, which it treated as a motion for summary judgment.

DiStefano and Stewart have appealed from the Superior Court's decision on the following grounds: (1) the General Assembly did not intend 11 *Del.C.* § 6537(b) to operate retrospectively; (2) the General Assembly did not intend the provisions of 11 *Del.C.* § 6537(b) to apply to persons who are eligible for parole or conditional release in less than 10 years; (3) the application of 11 *Del.C.* § 6537(b) to them would violate the *ex post facto* prohibition of the United States Constitution; and (4) the application of 11 *Del.C.* § 6537(b) to them would violate the substantive due process guarantees of both the United States Constitution and the Delaware Constitution. We have concluded that none of the claims raised by DiStefano and Stewart are meritorious.

*Facts*

DiStefano was convicted in the New Castle County Superior Court on August 11, 1982, of Rape in the Second Degree in violation of 11 *Del.C.* § 763 (repealed in 1986), a Class B felony, and Kidnapping in the Second Degree in violation of 11 *Del.C.* § 783, also a Class B felony, both offenses arising out of an incident occurring on May 5, 1982. On October 8, 1982, DiStefano was sentenced to a fifteen-year prison term for the rape, beginning August 11, 1982, suspended after ten years for ten years of probation, and to a consecutive ten-year prison term for the kidnapping, suspended after two years for ten years of additional probation. DiStefano has remained in the custody of the Department of Correction since the commencement of the aforementioned sentences. He became eligible for parole on November 4, 1985. In December of 1985, his application for parole was considered and denied. Thereafter, on June 5, 1986, DiStefano was placed on work release at the Plummer Center by the Department of Correction.

Stewart was convicted in the New Castle County Superior Court on December 5, 1978, of Attempted Rape in the First Degree in violation of 11 *Del.C.* §§ 764 (repealed in 1986) and 531, a Class A felony; Robbery in the First Degree in violation of 11 *Del.C.* § 832, a Class B felony; Possession of a Deadly Weapon During the Commission of a Felony in violation of 11 *Del.C.* § 1447, also a Class B felony; Burglary in the Second Degree in violation of 11 *Del.C.* § 825, a Class C felony; Kidnapping in the Second Degree in violation of 11 *Del.C.* § 783, a Class B felony; and Offensive Touching in violation of 11 *Del.C.* § 601, a Class B misdemeanor. On February 14, 1979, Stewart was sentenced to serve consecutive prison terms of ten years for the rape, three years without parole for the robbery, five years without parole for the

weapons offense, two years for the burglary, three years for the kidnapping and six months for the offensive touching, for a total term of twenty-three years and six months, beginning May 26, 1978. Stewart has also remained in the custody of the Department of Correction since the commencement of his sentences. During the period of his incarceration through 1985, Stewart was permitted to leave prison for several home visits under the Department of Correction's furlough/special visit program. · On December 12, 1986, after serving eight years of his sentence, Stewart became eligible for parole.

On February 21, 1986, 11 *Del.C.* § 6537(b) became effective. It provides that:

> Notwithstanding any other provision of this section or title to the contrary, the Department [of Correction] shall have no authority to place any person convicted of a class A felony, during the first 10 years of said sentence, or of any class A or B felony sex offense, during the first 10 years of said sentence, or any person sentenced pursuant to Sec. 4204(k) of this title on any program or status beyond the confines of a secured institution to which he or she must be classified. In the event of the death or serious illness of an immediate family member, or a similar emergency, the Commissioner of Correction shall have the authority to permit such person an escorted visit within the State under strict security. In the event that there exists extraordinary circumstances, excluding emergency situations authorized by the Commissioner pursuant to the previous sentence of this subsection, and the Commissioner of Correction agrees, he may petition the Superior Court, after notice to the Attorney General, for permission to exempt an in-

dividual from the limitations contained in this section.

11 *Del.C.* § 6537(b). Following the enactment of Section 6537(b), Department of Correction officials continued to permit prisoners sentenced for Class A felonies or Class B felony sex offenses[1] committed prior to the effective date of the statute, including DiStefano and Stewart, to participate in the departmental community-release programs and other activities outside the confines of a secured institution, even though they had not yet served 10 years of their sentence.

The Attorney General of the State of Delaware was requested to render an opinion concerning the Department of Correction's interpretation and application of 11 *Del.C.* § 6537(b). In December of 1986, the Attorney General opined that the statute, as amended, did apply to persons whose offenses pre-dated its enactment and also applied to persons whose sentences for the offenses were less than ten years. Thereafter, the Department of Correction notified all Class A felony offenders and Class B felony sex offenders, including DiStefano and Stewart, that Section 6537(b) precludes their participation in any community-release program or "outside status" activities, until they have served 10 years on their terms, regardless of when their offenses were committed or the length of their sentence. Accordingly, DiStefano's work-release status has been revoked and Stewart is no longer considered eligible for home visits.

### *Legislative Intent and Statutory Construction*

DiStefano and Stewart argue that 11 *Del.C.* § 6537(b) is ambiguous in two respects. First, they argue that it is not clear that the General Assembly intended

---

**1.** The Class A felonies under the Delaware Criminal Code are Murder in the Second Degree under 11 *Del.C.* § 635, Murder in the First Degree under 11 *Del.C.* § 636, former Rape in the First Degree under 11 *Del.C.* § 764 (since repealed), Unlawful Sexual Intercourse in the Second Degree under 11 *Del.C.* § 774, Unlawful Sexual Intercourse in the First Degree under 11 *Del.C.* § 775, Kidnapping in the First Degree under 11 *Del.C.* § 783A, or an attempt to com-

mit any of those crimes under 11 *Del.C.* § 531. The Class B felony sex offenses under the Delaware Criminal Code are former Rape in the Second Degree under 11 *Del.C.* § 763 (since repealed), Unlawful Sexual Penetration in the First Degree under 11 *Del.C.* § 772, Unlawful Sexual Intercourse in the Third Degree under 11 *Del.C.* § 773, or an attempt to commit any of those offenses under 11 *Del.C.* § 531.

the statute to apply to offenders who were convicted and sentenced prior to its enactment date, an application which DiStefano and Stewart characterize as retroactive.[2] Second, DiStefano and Stewart argue that it is not clear that the General Assembly intended the statute to apply to persons who, by the terms of their sentence, are eligible for parole or conditional release in less than 10 years.

A statute is ambiguous if it is reasonably susceptible of different conclusions or interpretations. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del. Supr., 492 A.2d 1242, 1246 (1985). "Ambiguity may also arise from the fact that giving a literal interpretation to words of the statute would lead to such unreasonable or absurd consequences as to compel a conviction that they could not have been intended by the legislature." *Id.* "If a statute is ambiguous, a court must resolve the ambiguity by reconciling its language with the legislative intent." *Daniels v. State*, Del.Supr., 538 A.2d 1104, 1109 (1988). However, if a statute is unambiguous, and an application of the literal meaning of its words would not be absurd or unreasonable, there is no legal basis for an interpretation of those words by the court. *Id.* In such a situation, the words of the statute must be given their literal meaning. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246.

■ In this case, the first alleged ambiguity is with respect to the persons affected by the statute. The pertinent part of Section 6537(b) reads:

> [T]he Department shall have no authority to place any person convicted of [the offenses listed] on any program or status beyond the confines of a *secured institution to which* he or she must be classified.

11 *Del.C.* § 6537(b). This language is not reasonably susceptible to different conclu-sions or interpretations. This language makes the statute applicable to *any person* convicted of the offenses listed. There are no exceptions. DiStefano and Stewart were both convicted of offenses listed in the statute. They are included within the term "any person" in the statute.

■ The second ambiguity alleged by DiStefano and Stewart relates to the application of Section 6537(b) to any person convicted of the offenses listed, regardless of the length of the imposed sentence. The pertinent part of the statute states that it shall apply to such persons "during the first 10 years of said sentence." 11 *Del.C.* § 6537(b). This language in the statute applies to two identifiable categories of inmates, those convicted of a Class A felony or a Class B felony sex offense. The statute makes no exceptions for persons within those categories, who were sentenced to be incarcerated for less than 10 years.

We find that 11 *Del.C.* § 6537(b) is unambiguous. There is no basis for statutory construction or interpretation. *Chrysler Corp. v. State*, 457 A.2d at 348. The Superior Court's task was to apply the literal meaning of the words in the statute to the facts which were before it. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d at 1246. We affirm the finding by the Superior Court that the provisions of Section 6537(b) apply to DiStefano and Stewart.

We also affirm the Superior Court's conclusion that the application of Section 6537(b) to DiStefano and Stewart is not unreasonable or absurd. *Id.* The admitted purpose of the General Assembly, in passing Section 6537(b), was to limit the Department of Correction's discretion in allowing contacts outside of a secured institution by a certain categories of persons. DiStefano and Watson are such persons.

---

**2.** DiStefano and Stewart claim that 11 *Del.C.* § 6537(b) is silent regarding whether its provision are to apply retrospectively, as such is ambiguous in that respect, and the ambiguity should be resolved by disallowing application of the statute to them. *See Chrysler Corp. v. State*, Del.Supr., 457 A.2d 345, 351 (1983) ("to give an act retrospective operation would be contrary to well settled principles of law applicable to the construction of statutes unless it be plainly and unmistakably so provided by the statute") (citing *Keller v. Wilson & Co.*, Del.Supr., 190 A. 115, 125 (1936)).

### Ex Post Facto

■ DiStefano's and Stewart's next argument is that if 11 *Del.C.* § 6537(b) is unambiguous and applies to them, it violates the *ex post facto* clauses of article I, §§ 9 and 10 of the United States Constitution. The *ex post facto* prohibition precludes Congress or the states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867)).[3] DiStefano and Stewart argue that the enactment of 11 *Del.C.* § 6537(b) has enhanced their punishment by limiting or precluding their participation in activities outside of a secured penal institution.

A law violates the *ex post facto* prohibition, when it "changes the punishment, and inflicts a greater punishment, than *the law annexed to the crime,* when committed." *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (1798) (emphasis added). The law annexed to the crime has been construed to mean that law which is "an integral part of the sentencing procedure." *Milhouse v. Levi,* 548 F.2d 357, 364 (D.C.Cir.1976). In *Milhouse,* the court held that eligibility for a furlough program, unlike eligibility for parole, was not an integral part of the sentencing procedure; that is, not part of the law annexed to the crime, but rather "[i]t is an internal rehabilitational program the denial of which cannot be said to be an element of the punishment attached to an inmate's initial conviction." *Id.*

■ The reasoning of *Milhouse* has been specifically applied to Section 6537(b) by the United States District Court of Delaware. *Marvel v. Ryan,* D.Del., C.A. No. 87–268 MMS, Schwartz, C.J. (Aug. 13, 1987). In *Marvel,* as a result of the enactment of Section 6537(b), a special visit was denied to a Class B felony sex offender, who had been sentenced prior to the effective date of the statute. The United States District Court held that Delaware's release programs were not an element of punishment attached to an inmate's initial conviction.[4] *Id.* Therefore, in *Marvel,* the United States District Court rejected an *ex post facto* challenge to 11 *Del.C.* § 6537(b). *Id.* We have reached the same conclusion.[5]

3. "[T]wo critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964 (citing *Lindsey v. Washington,* 301 U.S. 397, 401, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937); *Calder v. Bull,* 3 U.S. 386, 390, 1 L.Ed. 648 (1798)) (footnotes omitted). Thus, in order to violate the *ex post facto* prohibition, a law must be retrospective, must disadvantage the offender by imposing greater punishment, and must also be a penal or criminal law. *Paschal v. Wainwright,* 738 F.2d 1173, 1176 (11th Cir.1984); *Weaver v. Graham,* 450 U.S. at 29, 101 S.Ct. at 964. *See also, Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

4. DiStefano and Stewart contend that release programs are a part of sentencing and that this is evidenced by 11 *Del.C.* § 4204(k) and 16 *Del.C.* § 4753A(b). Section 4204(k) permits a judge to bar an offender from a release program as part of the sentence. Section 4753A(b) bars a convicted drug trafficker from participation in a release program for specified periods. The fact that these statutes dictate that some prisoners may be denied access to release programs does not confer entitlement to such access on all other offenders.

5. In a case similar to that at bar, the United States Court of Appeals for the Tenth Circuit sustained changes to Oklahoma's classification of prisoners against an *ex post facto* challenge. *Dyke v. Meachum,* 785 F.2d 267 (10th Cir.1986). In *Dyke,* the court held that the change which the appellant challenged related to the internal administration of a prison and "in the absence of any showing of punitive intent, the *Ex Post Facto* Clause does not bar a prison from changing the regulations governing their internal classification of prisoners." *Dyke v. Meachum,* 785 F.2d at 268 (citation omitted). DiStefano and Stewart argue that *Dyke* is distinguishable from their case by the fact that the General Assembly here changed the internal classification of prisoners by statute rather than the Department of Correction changing the classification by altering its regulations. The bright line distinction between regulations and statutes which DiStefano and Stewart espouse is undermined by *Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). In *Miller,* the Court invalidated judicially created sentencing guidelines. *Id.* at 482 U.S. 435–36, 107 S.Ct. at 2454. Thus, regulations as well as statutes can violate the *ex*

■ Section 6537(b) "does not affect the maximum or minimum prison sentence a court may impose, the point at which the prisoner becomes eligible for parole, or his mandatory release date." *Francis v. Fox*, 838 F.2d 1147, 1150 (11th Cir.1988) (citing *Dufresne v. Baer*, 744 F.2d 1543, 1550 (11th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985)). The Delaware statute, like the one addressed in *Milhouse*, is an administrative law which regulates the Department of Correction's internal affairs, and is not a law annexed to the crime. We affirm the decision of the Superior Court in this case, which held that 11 *Del.C.* § 6537(b) does not violate the federal constitutional prohibition against the enactment of the *ex post facto* laws.

### Substantive Due Process

■ The United States Constitution prohibits governmental deprivations of life, liberty or property without due process of law. U.S. Const. amend. V, XIV. "[A person] is not *wholly* stripped of constitutional protections when he is imprisoned for a crime." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). *See generally Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979). DiStefano and Stewart's final argument is that if 11 *Del.C.* § 6537(b) does not violate the *ex post facto* prohibitions, it does violate their right to *substantive* due process,[6] which is guaranteed under both the United States Constitution and the Delaware Constitution.[7]

The protection afforded by the guarantee of substantive due process interposes a bar to legislation that "manifests a patently arbitrary classification, utterly lacking in rational justification." *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). Legislation, like 11 *Del.C.* § 6537(b), regulating what is considered to be an injurious practice within a state, is presumed constitutional "unless ... it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." *United States v. Carolene Products Co.*, 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938) (footnote omitted).[8] Therefore, a

*post facto* prohibition. We find that the proper *ex post facto* analysis, in a case raising the distinction between a punitive provision and a regulatory one, is not whether the enactment is a statute as opposed to a regulation, but rather "whether the legislative aim was to punish [the offender] for past activity, or whether the restriction ... comes about as a relevant incident to the regulation of a present situation." *DeVeau v. Braisted*, 363 U.S. 144, 160, 80 S.Ct. 1146, 1155, 4 L.Ed.2d 1109 (1960).

6. Stewart and DiStefano have abandoned their *procedural* due process argument. *See Winsett v. McGinnes*, 617 F.2d 996 (3rd Cir.1980). The type of due process violation alleged is determinative of the nature and standard of judicial review.

> It is not enough to note that [DiStefano and Stewart] rely on the Due Process Clause of the Fourteenth Amendment, for that Clause is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights. Thus, the State, as well as the Federal Government, must comply with the commands in the First and Eighth Amendments; so too, the State must respect the guarantees in the Fourth, Fifth, and Sixth Amendments. Second, it contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "regardless of the fairness of the procedures used to implement them." *Ante,* [474 U.S. 327, 106 S.Ct. 662] at 665 [88 L.Ed.2d 662]. Third, it is a guarantee of fair procedure, sometimes referred to as "procedural due process": the State may not execute, imprison, or fine a defendant without giving him a fair trial, nor may it take property without providing appropriate procedural safeguards.

*Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 677–78, 88 L.Ed.2d 662 (1986) (footnotes omitted).

7. The "law of the land" provision of article I, section 9 of the Delaware Constitution is analogous to the federal due process clause and incorporates comparable substantive due-process requirements. *See, e.g., In re Opinion of the Justices*, Del.Supr., 246 A.2d 90, 92 (1968); *Matter of Carolyn S.S.*, Del.Supr., 498 A.2d 1095, 1098 (1984); *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, Del.Super., 462 A.2d 416, 419 (1983).

8. "The United States Supreme Court has determined that the 'States have the power to legislate against what are found to be injurious practices in their internal commercial and business

substantive due process analysis of governmental action in the form of legislation, requires the court to determine whether there are any facts, either known or which could reasonably be assumed, which affords support for the legislation. *United States v. Carolene Products Co.*, 304 U.S. at 154, 58 S.Ct. at 784–85; *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 462 A.2d at 423–24.

Stewart and DiStefano argue that no rational basis exists, or can be imagined, for the restrictions imposed by 11 *Del.C.* § 6537(b) on all persons convicted of a Class A felony or a Class B felony sex offense, in contrast to those persons who have committed other serious offenses. However, we find that there are facts which can be reasonably assumed to afford support for the decision of the General Assembly to enact legislation restricting the ability of persons who are convicted of a Class A felony or Class B felony sex offense from interacting with the public, during the first ten years of their confinement. We also find that the General Assembly's decision not to make 11 *Del.C.* § 6537(b) all inclusive, by extending its restrictions to every category of criminal conviction to which they might reasonably have been applied, is not determinative for purposes of substantive due process. *Flemming v. Nestor*, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960).

The Due Process Clause does not require a state to relieve an inmate from having to serve a valid sentence in a confined setting. *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Thus, if a state desires to have all or *some* of its criminal sentences served completely within the confines of a secured penal institution, the Constitution does not require the state to abandon that goal by adopting a system of early release. *Id.* "[T]here is no constitutional or inherent right of a convicted person to be conditionally released

before the expiration of a valid sentence." *Id.* at 7, 99 S.Ct. at 2104.

The guarantee of substantive due process is only violated when the government engages in actions which "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples toward those charged with the most heinous offenses." *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945). Section 6537(b) is not such a statute. In extraordinary circumstances, the Commissioner of Corrections may petition the Superior Court, after notice to the Attorney General, for permission to exempt an individual, who has been convicted of a Class A felony or a Class B sex offense, from its limitations. 11 *Del.C.* § 6537(b). We affirm the Superior Court's conclusion that there has been no violation of DiStefano's or Stewart's right to substantive due process under either the United States Constitution or the Delaware Constitution.

### Conclusion

All the rulings of the Superior Court, which led to the judgment that dismissed the complaint filed by DiStefano and Stewart, are found to be correct. Therefore, the judgment of the Superior Court is AFFIRMED.

### ON MOTION FOR REHEARING EN BANC

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ. (constituting the Court en banc).

This 16th day of November, 1989, the Court has before it DiStefano and Stewart's motions for reargument and, alternatively, for rehearing *en banc.* The motions state, *inter alia*, that the proper focus under an *ex post facto* analysis is whether a change in the law has "disadvantage[d] the offender affected by it." *Miller v. Florida*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham*, 450 U.S. at

---

affairs, so long as their laws do not run afoul of some specific federal constitutional prohibition or some valid federal law.'" *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 462

A.2d at 423–24 (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 730–31, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1963)).

29, 101 S.Ct. at 964). The validity of this proposition, as a component of a proper *ex post facto* analysis, was specifically recognized in footnote three of our opinion. Nevertheless, after a complete analysis, we concluded that DiStefano and Stewart have not been disadvantaged, in violation of the *ex post facto* prohibition, by the enactment of legislation which makes them generally ineligible for any furlough or work release program.

The United States Supreme Court recently reaffirmed its rejection of "the notion 'that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause.'" *Kentucky Dept. of Corrections v. Thompson,* — U.S. —, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (emphasis in original) (quoting *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). Similarly, the *degree of disadvantage* which DiStefano and Stewart must demonstrate to establish a violation of the *ex post facto* prohibition, requires a showing that the statute which has been enacted "makes more onerous the punishment for crimes commited before its enactment." *Miller v. Florida,* 482 U.S. at 435, 107 S.Ct. at 2454 (quoting *Weaver,* 450 U.S. at 36, 101 S.Ct. at 968). We remain convinced that DiStefano and Stewart have not sustained that burden.[9]

We find no merit in any of the other issues which are now raised by DiStefano and Stewart. Accordingly, the motions for reargument and rehearing *en banc* are DENIED.

---

**9.** In footnote five, we noted that in *Miller,* the United States Supreme Court had invalidated judicially created sentencing guidelines. We are cognizant that a statute directed the promulgation of the guidelines by the Supreme Court of Florida, and that those guidelines only became effective after adoption by the Florida legislature. The issue before the United States Supreme Court was whether the revision of those guidelines, by a subsequently enacted Florida statute, violated the *ex post facto* prohibition. We remain convinced that the teaching of *Miller* is that an *ex post facto* violation can occur by virtue of the enactment of a statute or by the enactment of a regulation or guideline, pursuant to a statute.