**In re Termination of Parental Rights, Rita Natalie HELLER [1] and Kevin Cannon Driscoll, Minor children.**

**Kendall DRISCOLL, Respondent Below–Appellant,**

v.

**DIVISION OF FAMILY SERVICES, Petitioner Below–Appellee.**

**Valerie DRISCOLL, Respondent Below–Appellant,**

v.

**DIVISION OF FAMILY SERVICES, Petitioner Below–Appellee.**

No. 453/468, 1994.

Supreme Court of Delaware.

Submitted: July 6, 1995.
Decided: Sept. 6, 1995.
Revised: Oct. 19, 1995.

---

1. Pseudonyms have been used to protect the identity of the parties to this appeal. Supr.Ct.R. 7(c). Pseudonyms charged per Order dated October 19, 1995.

Thomas J. Eastburn, (argued), Allmond, Eastburn and Benge, Wilmington, for Appellant–Kendall Driscoll.

Vivian A. Houghton (argued), Wilmington, for appellant-Valerie Driscoll.

Wendy A. Rising (argued), Department of Justice, Wilmington, for appellee-Division of Family Services.

Before HOLLAND, HARTNETT, and BERGER, JJ.

HARTNETT, Justice.

In this consolidated appeal from the Family Court, we address the process used to terminate the parental rights as to two young children. .

The Family Court held, that under all the circumstances, the Division of Family Services had no duty to attempt a reunification between Appellant–Kendall Driscoll ("Driscoll") and his son Kevin before Driscoll's parental rights could be terminated and that the failure of the Division to prepare a reunification plan did not preclude the Family Court from finding that the termination of the parental rights of Driscoll was in the best interests of Kevin. We find no error in those rulings and we therefore affirm the termination of the parental rights of Driscoll as to his son Kevin.

We also find that there was no violation of the constitutional rights of Valerie Driscoll ("Mother") in the proceedings that terminated her parental rights as to her son Kevin and her daughter Rita. We, therefore, affirm the Order of the Family Court terminating her parental rights as to her two children.[2]

## I.

In July, 1991, the State of Delaware Division of Family Services ("the Division") petitioned for, and received, temporary custody of the two minor children. The record clearly shows that both Mother and Driscoll had seriously neglected and abused both children. Kevin was born "cocaine positive" in 1990. Frequently the children were left home alone by Mother and Driscoll, both of whom were extensive illegal drug users. Ultimately, in 1991, Mother and Driscoll pled guilty to endangering the welfare of the two children. Shortly thereafter, Driscoll was sentenced to prison upon pleading guilty to unlawful sexual conduct charges involving Rita (his stepdaughter). In 1993, Mother was sentenced to incarceration in Pennsylvania after pleading guilty to robbery and other offenses.

Between November 1991 and September 1992, on three occasions before Mother's incarceration, the Division developed case plans for the reunification of Mother with both her minor children. Mother failed to substantially comply with any of the requirements of these virtually identical plans and failed adequately to complete any of the required drug treatment programs. Moreover, throughout the time between the development of the first case plan and the Division's petition for termination of her parental rights, Mother maintained little or no contact with either the Division or her minor children.

After the Division received temporary custody, but before his incarceration, Driscoll showed little interest in, and made no contact with, his son Kevin. Furthermore, a No Contact Order of the Family Court preventing Driscoll from having contact with Rita precluded the Division from developing any reunification plan as to Driscoll and Rita, thereby preventing Driscoll from being a part of the effort to preserve the sibling relationship between the two children. The Division, therefore, did not attempt to develop a case plan for the reunification of Driscoll and his son.

---

**2.** The Family Court also terminated the parental rights of Rita's natural father, who failed to respond to any notices or to appear at the Family Court hearing. Rita's natural father has not appealed.

On January 11, 1993, the Division filed a Petition For Termination and Transfer of Parental Rights ("the Petition") with the Family Court seeking to terminate the parental rights as to both children with the intention of placing them for adoption with the children's foster care parents. The Family Court conducted a two-day hearing and, in its well-reasoned Opinion dated October 28, 1994, found that the Division had presented clear and convincing evidence that (1) both Mother and Driscoll had failed to plan for the physical, mental or emotional well-being of either child; (2) there was little possibility of remedying the factors that led to the children being placed in the State's care; and (3) termination of the parents' rights was in the best interests of the children. *In Re RNH & KCD, Minor Children,* Del.Fam., File No. 93–01–0T, Horgan, J. (October 28, 1994). Mother and Driscoll both appealed to this Court.

## II.

▇▇▇▇ The clear and convincing standard of proof must be met when the termination of parental rights is sought. *Patricia A.F. v. James R.F.,* Del.Supr., 451 A.2d 830 (1982). On appeal from a decision of an order terminating parental rights, this Court will conduct a limited review of the factual findings to "assure that they are sufficiently supported by the record and result from an orderly and logical deductive process." *In Interest of Kelly Stevens,* Del.Supr., 652 A.2d 18, 23 (1995). Absent such assurances, or if the factual findings are clearly erroneous, this Court can make independent findings. *Levitt v. Bouvier,* Del.Supr., 287 A.2d 671, 673 (1972). Additionally, as to appellate issues which "implicate rulings of law, [this Court's] review is *de novo* and this Court will set aside erroneous interpretations of applicable law." *In Interest of Kelly Stevens,* 652 A.2d at 23 (citing *Black v. Gray,* Del.Supr., 540 A.2d 431, 432 (1988)).

## III.

▇▇ Driscoll first claims that the Family Court erred as a matter of law in finding that the Division had no statutory obligation, under all the circumstances present here, to attempt reunification between Driscoll and Kevin after the Petition was filed. 29 Del.C. § 9003 states, in pertinent part:

The Department of Services for Children, Youth and Their Families ("Department"), [of which the Division is a part,] shall have the following powers, duties, and functions:

\*    \*    \*    \*    \*    \*

(3) To provide for a variety of facilities and services to children, youth and their families which shall include, but not be limited to the following:

\*    \*    \*    \*    \*    \*

b. Preplacement, preventive services and reunification services;

\*    \*    \*    \*    \*    \*

(4) To prepare and maintain a written case plan for each child under its supervision or custody . . .

Although 29 Del.C. § 9003(3)(b) requires the Division to provide reunification services, subsection (13) clarifies that provision. It states that the Division shall have the power "[t]o provide or contract for services designed to maintain or provide permanent homes for children who are in out-of-home care, through the provision of adoption services or, *whenever feasible, reunification services for children and their families:* ". 29 Del.C. § 9003(13) (emphasis added).

Driscoll pled guilty and remained incarcerated shortly after the Division petitioned for and received temporary custody of Kevin and Rita. When filing its first case plan in November, 1991, the Division sought only to attempt reunification of both children with Mother. At that time, Mother was not in prison and Driscoll was not likely to be released from detention until late 1995. Two subsequent case plans developed by the Division similarly attempted reunification between only the non-incarcerated Mother and her two minor children. Furthermore, Dris-

coll, after the Division received temporary custody of the two children, before his incarceration and before the Division filed its petition for termination of parental rights, attempted to make contact with Kevin on only two occasions. The Family Court found that the Division had made reasonable attempts at reunification as to both children with the then non-incarcerated parent (Mother). *Cf. Division of Child Protective Services v. Doran,* Del.Fam., 529 A.2d 765 (1987).

Accordingly, we conclude that the Family Court did not err in holding that the Division's reunification efforts between Mother and the children were reasonable, and its finding that it would not be feasible for the Division to have attempted reunification between Kevin and Driscoll, his incarcerated Father.

## IV.

■ Driscoll also claims that the absence of a developed case plan for reunification between him and his son precluded the Family Court from determining that the Division had acted in the best interests of the child. Driscoll cites no authority for this proposition. The Division determined that Driscoll, prior to his incarceration, had been unable to care for his son and would continue to be unable to care for him for an indefinite period of time following the filing of the Petition because of his incarceration and because of the other factors that caused him not properly to plan and care for his son before his incarceration. The Division was aware that Driscoll's prior disinterest and lack of substantial contact with Kevin made it unlikely that he would ever be able properly to care for Kevin. Moreover, the Division knew that any case plan developed, which might take effect after Driscoll's release from prison, could not have included Rita because of the existing No Contact Order. The Division determined that keeping the two children together was in the children's mutual best interest. As the Family Court Opinion shows, the Division's decision was supported by clear and convincing evidence and will not be overruled on appeal. *See Stoltz Management Co. v. Consumer Affairs Bd.,* Del.Supr.,

616 A.2d 1205, 1208 (1992). Even Driscoll conceded, at oral argument, that if both children's interests would best be served by preserving their sibling relationship, his claim would be meritless. "The interests of the child[ren] remain paramount, and all questions of statutory interpretation must be settled in light of this objective." *In Re Burns,* Del.Supr., 519 A.2d 638, 644 (1986). Driscoll's appeal is, therefore, without merit.

## V.

Mother contends that the Family Court violated her due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, she claims that the Family Court violated these rights (1) by allowing her to proceed at the termination of parental rights hearing without the presence of counsel; (2) by refusing to allow witnesses to testify telephonically on her behalf; and (3) by not providing for her physical presence during the hearings and instead, requiring that she participate in the proceedings via an inadequate telephone hook up.

## VI.

■ Natural parents possess a fundamental liberty interest in the care, custody and management of their children. *See, In re Burns,* 519 A.2d at 645 (citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982)). Before the State can intercede and deprive a parent of this fundamental liberty interest, it must afford the parent with the requisite due process protection. *Lassiter v. Dept. of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).

■ In a termination of parental rights proceeding, we analyze the due process standards in accordance with the factors established by the U.S. Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). These factors are:

(1) the private interest that will be affected by the official action;

(2) the risk that there will be an erroneous deprivation of the interest through the procedures used and the probable value of any additional or substitute procedural safeguards; and

(3) the government interest involved, including the added fiscal and administrative burdens that additional or substitute procedures would require.

*In re Burns,* 519 A.2d at 645 (citations omitted). Here the interests of the parent and the State are equally compelling. As such, Mother's claim must be analyzed by considering the sufficiency of the termination proceedings and the extent to which additional safeguards would have protected against possible erroneous deprivation of Mother's parental rights.

### VII.

■ We find that the Family Court did not violate Mother's right to procedural due process. Mother received ample notice of the impending proceedings, had adequate opportunity to consult with court-appointed counsel and prepare for trial, and was obviously aware of the ramifications upon her parental rights should the court find as the Division requested. 13 Del.C. § 1103(a)(5) states, in pertinent part:

(a) The procedure for termination of parental rights for the purpose of adoption ... may be initiated whenever it appears to be in the child's best interest and that 1 or more of the following grounds exist:

\* \* \* \* \* \*

(5) The [parents] of the child, ... are not able, or have failed, to plan adequately for the child's physical needs or his mental and emotional health and development and,

(a) In the case of a child in the care of the [Division of Family Services]:

1. The child has been in the care of the [Division of Family Services] for a period of 1 year, ..., or there is ... a history of neglect, abuse or lack of care of this child or other children by this

parent; or the parent has been convicted of a felony involving the child; or the parent is incapable of discharging parental responsibilities because of extended or repeated incarceration, except that the Court shall consider post conviction conduct of the parent or parents.

2. The conditions which led to the child's placement, or similar condition of a harmful nature, continue to exist and there appears to be little likelihood that these conditions will be remedied at an early date which would enable the parent to discharge parental responsibilities so that the child can be returned to the parent in the near future.

In *In re Hanks,* Del.Supr., 553 A.2d 1171, 1176–78 (1989), we held that 13 Del.C. § 1103(a)(5) was not "unconstitutionally vague" and, as such, did not violate a parent's right to due process of law. The statute clearly enunciates the required procedures for the Division when it seeks to have terminated a parent's rights because of the failure of the parent to plan for the child. Moreover, it is clear that the Division fully complied with the mandates of the statute.

### VIII.

■ The Family Court appointed counsel to represent Mother at the termination hearing. *See Matter of Carolyn S.S.,* Del.Supr., 498 A.2d 1095 (1984). The record shows that Mother is a college graduate with an advanced degree and that she knowingly, intelligently, and voluntarily chose at the hearing to discharge the appointed counsel and to proceed *pro se,* despite the Court's suggestion that she not do so. An individual has the right to proceed without counsel. *Cf. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that a defendant in a state criminal trial maintains an independent constitutional right of self-representation and that he may proceed to represent himself when he voluntarily and intelligently elects to do so.) [3] No procedural violation therefore occurred when Mother chose to proceed *pro se.*

---

**3.** We do not suggest that all the constitutional protections afforded a criminal defendant apply

to a petition to terminate parental rights which is a civil proceeding.

## IX.

During the hearing, Mother asked that two character witnesses be allowed to testify on her behalf by telephone. Both prospective witnesses worked at the Pennsylvania prison in which Mother was incarcerated at the time of the hearing. The Family Court agreed to hear these witnesses, but required that they be physically present at the hearing. The Judge expressed a legitimate concern that if character witness testimony was heard by telephone he could not adequately identify or assess the credibility of the witness. Further, the Judge offered to permit these witnesses to testify on the following day in order to allow for them to make the extended trip to Family Court in Delaware. Mother specifically declined the offer of a continuance for that purpose.

Requiring a witness to testify personally at trial serves a number of important policies. *Bonamarte v. Bonamarte*, Mont. Supr., 866 P.2d 1132, 1134 (1994). The Court's determination that the character witnesses should be physically present to testify was not an abuse of discretion. *See* Fam.Ct. Civ.R. 43(a). Under all the facts and circumstances present here, no abuse of discretion or due process violation has been shown.

## X.

As Mother concedes, an incarcerated parent does not have a constitutional right to be physically present at a termination of parental rights hearing. "If a parent has been afforded procedural due process for a hearing to terminate parental rights, allowing a parent who is incarcerated or otherwise confined in custody of a government to attend the termination hearing is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion". *In re Interest of L.V.*, Supr., 240 Neb. 404, 482 N.W.2d 250, 258 (1992).

Mother, however, argues that the Family Court violated her constitutional due process rights because a faulty telephone connection did not allow her to hear all the testimony at the hearing. While there was some difficulty as to one witness being heard by Mother, the record shows that in every instance where Mother claimed difficulty in hearing testimony, the testimony was repeated and she was able to hear it. The record also shows that the Judge made sufficient efforts to assure that Mother could hear all the testimony and that all the documentary evidence was read to her (even to the extent that the testimony or the reading of the documentary evidence was repeated).

Further, Mother offered nothing to show that her telephonic participation or difficulty in hearing some testimony caused her any prejudice or that the Family Court would have ruled in her favor had she been able to participate more effectively by telephone. Accordingly, we conclude that Mother has not established that the Family Court denied her due process when it allowed her to participate in the hearing telephonically.

In future similar proceedings, however, the Family Court should, before such proceedings commence, make certain that the communication system is working properly and that all parties can effectively hear (and where applicable, see) the proffered testimony.

## XI.

After carefully reviewing the entire record and the well-reasoned Opinion of the Family Court, we are convinced that the Division sustained its burden of showing by clear and convincing evidence that: (1) the children had been in the care of the Division for over one year; (2) there was a history of previous neglect, abuse and lack of care of the children by the parents; (3) Driscoll and Mother were incapable of discharging their parental responsibilities because of their extended incarceration and for other reasons; (4) the conditions which led to the children's placement continue to exist and there appears little likelihood that these conditions will be remedied at an early date; and (5) the termination of the parental rights was in the best interests of both children.

The Family Court judgment terminating parental rights as to the two minor children is, therefore, AFFIRMED.