IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDRE MASON,[1] | § | |
| | § | No. 246, 2017 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court of |
| | § | the State of Delaware in and for |
| v. | § | New Castle County |
| | § | |
| DIVISION OF FAMILY SERVICES, | § | File No. 16-04-07TN |
| | § | Petition No. 16-10828 |
| Petitioner Below, | § | |
| Appellee, | § | |
| | § | |
| and | § | |
| | § | |
| OFFICE OF THE CHILD | § | |
| ADVOCATE, | § | |
| | § | |
| Appellee. | § | |

Submitted: January 4, 2018
Decided: March 19, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

This 19th day of March 2018, upon consideration of the appellant's brief under

Supreme Court Rule 26.1(c), his attorney's motion to withdraw, and the appellees'

responses and motions to affirm, it appears to the Court that:

---

[1] By Order dated June 20, 2017, the Court assigned a pseudonym to the appellant. Del. Sup. Ct. R. 7(d).

(1)     In March 2015, the State Division of Family Services ("DFS") filed a dependency and neglect petition against a twenty-eight-year-old mother, concerning her three children born in 2005, 2006, and 2009, and the children's respective fathers. The Family Court granted emergency ex parte custody of the children to DFS. And at the mandated hearings that followed, the court continued custody with DFS for the duration of the dependency and neglect proceedings.

(2)     In April 2016, DFS filed a termination of parental rights petition seeking to terminate the parents' parental rights in the three children. By order dated May 24, 2017, the Family Court granted the petition and terminated the parental rights of each parent.

(3)     In this appeal, one of the fathers, Andre Mason, has appealed the Family Court's decision terminating his parental rights in his daughter, Olivia, born in February 2006.[2] Mason's counsel has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26.1(c). Mason's counsel asserts that she made a conscientious review of the record and found no arguable claim to raise on appeal. Mason has submitted points he would like the Court to consider on appeal. Counsel for DFS and the attorney guardian ad litem appointed to represent the children have responded to the no-merit brief, Mason's points, and have moved to affirm the Family Court's judgment.

---

[2] The Court has assigned a pseudonym to the child.

(4)     Mason has been incarcerated for all—or nearly all—of Olivia's life and was incarcerated during both the dependency and neglect and the termination proceedings.  In fact, Mason has been incarcerated in Delaware since April 2006, when he was extradited here and held in default of bail on charges of attempted first degree murder and weapon offenses.[3]  He agreed to plead guilty to assault in the first degree, and was sentenced, effective April 5, 2006, to twenty years of Level V incarceration, suspended after fifteen years for two years of Level IV work release, suspended after six months for probation.[4]  The Family Court estimated that Mason has approximately nineteen months left of incarceration.

(5)     Mason was appointed counsel for the dependency and neglect proceedings.  He and his counsel participated in those proceedings.  Mason also attended the two-day termination-of-parental-rights hearing and, through his counsel, presented testimony in support of his position that terminating his parental rights was not in Olivia's best interests.[5]

(6)     In Delaware, termination of parental rights is based on a two-step statutory analysis.[6]  Both steps must be established by clear and convincing

---

[3] *See State v.* [*Mason*], Cr. ID No. 0511021324 (Del. Super. Ct. Jan. 5, 2007).

[4] The Family Court erroneously stated that Mason "has been incarcerated since November 2009 when he was arrested for various drug related charges."

[5] Over the course of the hearing, the court also heard testimony from a cadre of professionals, including a DFS treatment worker, an adoption social worker, a foster care facilitator, a family assessment specialist, a family interventionist, and Olivia's therapist.

[6] *Shepherd v. Clemens*, 752 A.2d 533, 536–37 (Del. 2000).

evidence.[7] First, the Family Court must determine whether there is a statutory basis

for termination under 13 *Del. C.* § 1103(a). When, as in this case, the statutory basis

for termination is an alleged failure or inability to plan, the court must find sufficient

evidence of at least one additional statutory condition[8] and find that DFS "made bona

fide, reasonable efforts to reunite the family."[9] Second, if the court finds a statutory

basis for termination, the court then must determine, under the factors set forth in 13

*Del. C.* § 722(a), whether severing parental rights is in the best interest of the child.

(7)    In this case, the Family Court determined, first, that DFS presented

clear and convincing evidence of a statutory basis for termination, namely Mason's

inability to plan for Olivia's physical needs and mental and emotional health and

development.[10] The court also found the existence of several additional statutory

conditions, including that Olivia had been in the custody of DFS for over one year;

that, due to his incarceration, Mason is incapable of discharging his parental

responsibilities; that Mason is not able to assume promptly legal and physical

custody of Olivia and to pay for her support; and that failure to terminate Mason's

parental rights would cause Olivia continued emotional stability or physical risk.[11]

---

[7] *Powell v. Dep't of Servs. for Children, Youth & Their Families,* 963 A.2d 724, 731 (Del. 2008).
[8] § 1103(a)(5)(a)(1)–(5).
[9] 963 A.2d at 737 (quoting *Newton v. Div. of Family Servs.*, 2006 WL 2852409, at *2 (Del. Oct. 4, 2006)).
[10] § 1103(a)(5).
[11] § 1103(a)(5)(a)(1), (3), (4), (5).

When finding that failure to terminate Mason's parental rights would cause Olivia continued emotional stability or physical risk, the court considered other relevant factors and found that there was little likelihood that Mason can assume care of Olivia in the near future; that DFS did not thwart Mason's efforts to assert his rights; and that delaying Olivia's placement in a permanent home while awaiting Mason's release from incarceration would be detrimental to her emotional well-being.[12] As for DFS' efforts to provide family preservation services to Mason under 29 *Del. C.* § 9003(3)(b), the Family Court determined that Mason's extended incarceration prevented DFS from providing such services.

(8) Second, the Family Court considered each of the best-interest factors and found that the following six factors favored terminating Mason's parental rights: Olivia's wishes;[13] the interaction and interrelationship of Olivia with Mason and other persons who may significantly affect her best interests; the mental and physical health of both Mason and Olivia; Olivia's adjustment to her home, school, and community; Mason's past and present compliance with his general rights and responsibilities as a parent; and Mason's criminal history.[14] The court found that

---

[12] § 1103(a)(5)(a)(1)(5)(A), (B), (E).

[13] Except for the trial testimony from Olivia's therapist, the record reveals little about Olivia's actual wishes as to her custody and residential arrangements. According to the therapist, Olivia would like to live with the half-sister who was taken into DFS custody with her in March 2015 and with whom she shared a foster home. Unlike her half-siblings, Olivia did not attend the interview with the trial judge.

[14] 13 *Del. C.* § 722(a)(2)–(6), (8).

one factor—Mason's wishes—weighed against terminating his parental rights.[15] On another factor—evidence of domestic violence—the court was neutral.[16]

(9) On appeal, Mason claims that DFS failed to use reasonable efforts to reunify him with Olivia and discriminated against him because of his incarceration. Mason's claims are not supported by the record and are without merit. Under the governing statute, DFS is required to make reasonable efforts to reunite the family "whenever feasible."[17] This Court has held that when a parent is incarcerated for an extended period, it may not be feasible to attempt reunification.[18] In this case, the Family Court concluded that Mason's extended incarceration prevented his reunification with Olivia and that, under the circumstances, DFS was not required to offer a reunification case plan to Mason. We find no error or abuse of discretion in that ruling. Moreover, although DFS did not offer a reunification case plan to Mason, it appears from the record that DFS did explore paternal relative resources. At trial, Fred Conkey, the DFS treatment worker, testified that, at Mason's suggestion, he approached Mason's mother—Olivia's paternal grandmother—as a possible placement option for Olivia. Mason's mother told Conkey that she was

---

[15] § 722(a)(1).

[16] § 722(a)(7).

[17] 29 *Del. C.* § 9003(13).

[18] *See, e.g., Heller v. Div. of Family Servs.*, 669 A.2d 25, 30 (Del. 1995); *cf. Waters v. Div. of Family Servs.*, 903 A.2d 720, 726 (Del. 2006) (finding that reunification services were feasible when father was released from incarceration less than thirty days after the paternity determination).

unwilling to have Olivia placed with her because she was already caring for another of Mason's children. Also, Conkey testified that he gave his contact information to Mason's mother in case she wanted to visit with Olivia, but that Mason's mother did not contact him.

(10) Our review of a Family Court decision terminating parental rights requires consideration of the facts and the law as well as the inferences and deductions made by the Family Court.[19] We review legal rulings de novo.[20] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[21] To the extent issues implicate rulings of fact, we review the factual findings of the Family Court only to assure that they are sufficiently supported by the record and are not clearly wrong.[22] We will not disturb inferences and deductions that are supported by the record and are the product of an orderly and logical deductive process.[23]

(11) Having carefully considered the parties' submissions on appeal and the Family Court record, we conclude that the record supports the Family Court's finding that there is clear and convincing evidence in favor of terminating Mason's parental rights. There is no abuse of discretion in the Family Court's factual findings

---

[19] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439–40 (Del. 2010).
[20] *Id.* at 440.
[21] *Id.*
[22] *Id.*
[23] *Id.*

and no error in the court's application of the law to the facts. We are satisfied that Mason's counsel made a conscientious effort to examine the record and the law and properly determined that Mason could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice